FERENS ET UX. *v.* JOHN DEERE CO., AKA DEERE & CO.

No. 88–1512.   Argued November 6, 1989—Decided March 5, 1990

KENNEDY, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, STEVENS, and O'CONNOR, JJ., joined. SCALIA, J., filed a dissenting opinion, in which BRENNAN, MARSHALL, and BLACK-MUN, JJ., joined, *post*, p. 533.

*Richard B. Tucker III* argued the cause for petitioners. With him on the briefs was *Stanley V. Ostrow.*

*David P. Helwig* argued the cause for respondent. With him on the brief was *Gary F. Sharlock.* *

JUSTICE KENNEDY delivered the opinion of the Court.

Section 1404(a) of Title 28 states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U. S. C.

---

*Hugh C. Griffin* filed a brief for the Product Liability Advisory Council as *amicus curiae* urging affirmance.

*Larry L. Simms, Steven C. Kany,* and *C. Paul Cavender* filed a brief for Pfizer Inc. as *amicus curiae.*

§ 1404(a) (1982 ed.). In *Van Dusen* v. *Barrack*, 376 U. S. 612 (1964), we held that, following a transfer under § 1404(a) initiated by a defendant, the transferee court must follow the choice-of-law rules that prevailed in the transferor court. We now decide that, when a plaintiff moves for the transfer, the same rule applies.

I

Albert Ferens lost his right hand when, the allegation is, it became caught in his combine harvester, manufactured by Deere & Company. The accident occurred while Ferens was working with the combine on his farm in Pennsylvania. For reasons not explained in the record, Ferens delayed filing a tort suit, and Pennsylvania's 2-year limitations period expired. In the third year, he and his wife sued Deere in the United States District Court for the Western District of Pennsylvania, raising contract and warranty claims as to which the Pennsylvania limitations period had not yet run. The District Court had diversity jurisdiction, as Ferens and his wife are Pennsylvania residents, and Deere is incorporated in Delaware with its principal place of business in Illinois.

Not to be deprived of a tort action, the Ferenses in the same year filed a second diversity suit against Deere in the United States District Court for the Southern District of Mississippi, alleging negligence and products liability. Diversity jurisdiction and venue were proper. The Ferenses sued Deere in the District Court in Mississippi because they knew that, under *Klaxon Co.* v. *Stentor Electric Mfg. Co.*, 313 U. S. 487, 496 (1941), the federal court in the exercise of diversity jurisdiction must apply the same choice-of-law rules that Mississippi state courts would apply if they were deciding the case. A Mississippi court would rule that Pennsylvania substantive law controls the personal injury claim but that Mississippi's own law governs the limitation period.

Although Mississippi has a borrowing statute which, on its face, would seem to enable its courts to apply statutes of limi-

tations from other jurisdictions, see Miss. Code Ann. § 15–1–65 (1972), the State Supreme Court has said that the borrowing statute "only applies where a nonresident [defendant] in whose favor the statute has accrued afterwards moves into this state." *Louisiana & Mississippi R. Transfer Co.* v. *Long*, 159 Miss. 654, 667, 131 So. 84, 88 (1930). The borrowing statute would not apply to the Ferenses' action because, as the parties agree, Deere was a corporate resident of Mississippi before the cause of action accrued. The Mississippi courts, as a result, would apply Mississippi's 6-year statute of limitations to the tort claim arising under Pennsylvania law and the tort action would not be time barred under the Mississippi statute. See Miss. Code Ann. § 15–1–49 (1972).

The issue now before us arose when the Ferenses took their forum shopping a step further: having chosen the federal court in Mississippi to take advantage of the State's limitations period, they next moved, under § 1404(a), to transfer the action to the federal court in Pennsylvania on the ground that Pennsylvania was a more convenient forum. The Ferenses acted on the assumption that, after the transfer, the choice-of-law rules in the Mississippi forum, including a rule requiring application of the Mississippi statute of limitations, would continue to govern the suit.

Deere put up no opposition, and the District Court in Mississippi granted the § 1404(a) motion. The court accepted the Ferenses' arguments that they resided in Pennsylvania; that the accident occurred there; that the claim had no connection to Mississippi; that a substantial number of witnesses resided in the Western District of Pennsylvania but none resided in Mississippi; that most of the documentary evidence was located in the Western District of Pennsylvania but none was located in Mississippi; and that the warranty action pending in the Western District of Pennsylvania presented common questions of law and fact.

The District Court in Pennsylvania consolidated the transferred tort action with the Ferenses' pending warranty action

but declined to honor the Mississippi statute of limitations as the District Court in Mississippi would have done. It ruled instead that, because the Ferenses had moved for transfer as plaintiffs, the rule in *Van Dusen* did not apply. Invoking the 2-year limitations period set by Pennsylvania law, the District Court dismissed their tort action. *Ferens* v. *Deere & Co.*, 639 F. Supp. 1484 (WD Pa. 1986).

The Court of Appeals for the Third Circuit affirmed, but not, at first, on grounds that the Ferenses had lost their entitlement to Mississippi choice-of-law rules by invoking § 1404 (a). The Court of Appeals relied at the outset on the separate theory that applying Mississippi's statute of limitations would violate due process because Mississippi had no legitimate interest in the case. *Ferens* v. *Deere & Co.*, 819 F. 2d 423 (1987). We vacated this decision and remanded in light of *Sun Oil Co.* v. *Wortman*, 486 U. S. 717 (1988), in which we held that a State may choose to apply its own statute of limitations to claims governed by the substantive laws of another State without violating either the Full Faith and Credit Clause or the Due Process Clause. *Ferens* v. *Deere & Co.*, 487 U. S. 1212 (1988). On remand, the Court of Appeals again affirmed, this time confronting the *Van Dusen* question and ruling that a transferor court's choice-of-law rules do not apply after a transfer under § 1404(a) on a motion by a plaintiff. 862 F. 2d 31 (1988). We granted certiorari, 490 U. S. 1064 (1989).

II

Section 1404(a) states only that a district court may transfer venue for the convenience of the parties and witnesses when in the interest of justice. It says nothing about choice of law and nothing about affording plaintiffs different treatment from defendants. We touched upon these issues in *Van Dusen*, but left open the question presented in this case. See 376 U. S., at 640. In *Van Dusen*, an airplane flying from Boston to Philadelphia crashed into Boston Harbor soon after takeoff. The personal representatives of the accident

victims brought more than 100 actions in the District Court for the District of Massachusetts and more than 40 actions in the District Court for the Eastern District of Pennsylvania. When the defendants moved to transfer the actions brought in Pennsylvania to the federal court in Massachusetts, a number of the Pennsylvania plaintiffs objected because they lacked capacity under Massachusetts law to sue as representatives of the decedents. The plaintiffs also averred that the transfer would deprive them of the benefits of Pennsylvania's choice-of-law rules because the transferee forum would apply to their wrongful-death claims a different substantive rule. The plaintiffs obtained from the Court of Appeals a writ of mandamus ordering the District Court to vacate the transfer. See *id.*, at 613–615.

We reversed. After considering issues not related to the present dispute, we held that the Court of Appeals erred in its assumption that Massachusetts law would govern the action following transfer. The legislative history of § 1404(a) showed that Congress had enacted the statute because broad venue provisions in federal Acts often resulted in inconvenient forums and that Congress had decided to respond to this problem by permitting transfer to a convenient federal court under § 1404(a). *Id.*, at 634–636. We said:

"This legislative background supports the view that § 1404(a) was not designed to narrow the plaintiff's venue privilege or to defeat the state-law advantages that might accrue from the exercise of this venue privilege but rather the provision was simply to counteract the inconveniences that flowed from the venue statutes by permitting transfer to a convenient federal court. The legislative history of § 1404(a) certainly does not justify the rather startling conclusion that one might 'get a change of a law as a bonus for a change of venue.' Indeed, an interpretation accepting such a rule would go far to frustrate the remedial purposes of § 1404(a). If a change in the law were in the offing, the parties might

well regard the section primarily as a forum-shopping instrument. And, more importantly, courts would at least be reluctant to grant transfers, despite considerations of convenience, if to do so might conceivably prejudice the claim of a plaintiff who initially selected a permissible forum. We believe, therefore, that both the history and purposes of § 1404(a) indicate that it should be regarded as a federal judicial housekeeping measure, dealing with the placement of litigation in the federal courts and generally intended, on the basis of convenience and fairness, simply to authorize a change of courtrooms." *Id.*, at 635–637 (footnotes omitted).

We thus held that the law applicable to a diversity case does not change upon a transfer initiated by a defendant.

## III

The quoted part of *Van Dusen* reveals three independent reasons for our decision. First, § 1404(a) should not deprive parties of state-law advantages that exist absent diversity jurisdiction. Second, § 1404(a) should not create or multiply opportunities for forum shopping. Third, the decision to transfer venue under § 1404(a) should turn on considerations of convenience and the interest of justice rather than on the possible prejudice resulting from a change of law. Although commentators have questioned whether the scant legislative history of § 1404(a) compels reliance on these three policies, see Note, Choice of Law after Transfer of Venue, 75 Yale L. J. 90, 123 (1965), we find it prudent to consider them in deciding whether the rule in *Van Dusen* applies to transfers initiated by plaintiffs. We decide that, in addition to other considerations, these policies require a transferee forum to apply the law of the transferor court, regardless of who initiates the transfer. A transfer under § 1404(a), in other words, does not change the law applicable to a diversity case.

A

The policy that § 1404(a) should not deprive parties of state-law advantages, although perhaps discernible in the legislative history, has its real foundation in *Erie R. Co.* v. *Tompkins*, 304 U. S. 64 (1938). See *Van Dusen*, 376 U. S., at 637. The *Erie* rule remains a vital expression of the federal system and the concomitant integrity of the separate States. We explained *Erie* in *Guaranty Trust Co.* v. *York*, 326 U. S. 99, 109 (1945), as follows:

> "In essence, the intent of [the *Erie*] decision was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court. The nub of the policy that underlies *Erie R. Co.* v. *Tompkins* is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away should not lead to a substantially different result."

In *Hanna* v. *Plumer*, 380 U. S. 460, 473 (1965), we held that Congress has the power to prescribe procedural rules that differ from state-law rules even at the expense of altering the outcome of litigation. This case does not involve a conflict. As in *Van Dusen*, our interpretation of § 1404(a) is in full accord with the *Erie* rule.

The *Erie* policy had a clear implication for *Van Dusen*. The existence of diversity jurisdiction gave the defendants the opportunity to make a motion to transfer venue under § 1404(a), and if the applicable law were to change after transfer, the plaintiff's venue privilege and resulting state-law advantages could be defeated at the defendant's option. 376 U. S., at 638. To allow the transfer and at the same time preserve the plaintiff's state-law advantages, we held

that the choice-of-law rules should not change following a transfer initiated by a defendant. *Id.*, at 639.

Transfers initiated by a plaintiff involve some different considerations, but lead to the same result. Applying the transferor law, of course, will not deprive the plaintiff of any state-law advantages. A defendant, in one sense, also will lose no legal advantage if the transferor law controls after a transfer initiated by the plaintiff; the same law, after all, would have applied if the plaintiff had not made the motion. In another sense, however, a defendant may lose a nonlegal advantage. Deere, for example, would lose whatever advantage inheres in not having to litigate in Pennsylvania, or, put another way, in forcing the Ferenses to litigate in Mississippi or not at all.

We, nonetheless, find the advantage that the defendant loses slight. A plaintiff always can sue in the favorable state court or sue in diversity and not seek a transfer. By asking for application of the Mississippi statute of limitations following a transfer to Pennsylvania on grounds of convenience, the Ferenses are seeking to deprive Deere only of the advantage of using against them the inconvenience of litigating in Mississippi. The text of § 1404(a) may not say anything about choice of law, but we think it not the purpose of the section to protect a party's ability to use inconvenience as a shield to discourage or hinder litigation otherwise proper. The section exists to eliminate inconvenience without altering permissible choices under the venue statutes. See *Van Dusen, supra*, at 634–635. This interpretation should come as little surprise. As in our previous cases, we think that "[t]o construe § 1404(a) this way merely carries out its design to protect litigants, witnesses and the public against unnecessary inconvenience and expense, not to provide a shelter for . . . proceedings in costly and inconvenient forums." *Continental Grain Co.* v. *Barge FBL-585*, 364 U. S. 19, 27 (1960). By creating an opportunity to have venue transferred between courts in different States on the basis of convenience, an op-

tion that does not exist absent federal jurisdiction, Congress, with respect to diversity, retained the *Erie* policy while diminishing the incidents of inconvenience.

Applying the transferee law, by contrast, would undermine the *Erie* rule in a serious way. It would mean that initiating a transfer under § 1404(a) changes the state law applicable to a diversity case. We have held, in an isolated circumstance, that § 1404(a) may pre-empt state law. See *Stewart Organization, Inc.* v. *Ricoh Corp.*, 487 U. S. 22 (1988) (holding that federal law determines the validity of a forum selection clause). In general, however, we have seen § 1404(a) as a housekeeping measure that should not alter the state law governing a case under *Erie*. See *Van Dusen, supra,* at 636–637; see also *Stewart Organization, supra,* at 37 (SCALIA, J., dissenting) (finding the language of § 1404(a) "plainly insufficient" to work a change in the applicable state law through pre-emption). The Mississippi statute of limitations, which everyone agrees would have applied if the Ferenses had not moved for a transfer, should continue to apply in this case.

In any event, defendants in the position of Deere would not fare much better if we required application of the transferee law instead of the transferor law. True, if the transferee law were to apply, some plaintiffs would not sue these defendants for fear that they would have no choice but to litigate in an inconvenient forum. But applying the transferee law would not discourage all plaintiffs from suing. Some plaintiffs would prefer to litigate in an inconvenient forum with favorable law than to litigate in a convenient forum with unfavorable law or not to litigate at all. The Ferenses, no doubt, would have abided by their initial choice of the District Court in Mississippi had they known that the District Court in Pennsylvania would dismiss their action. If we were to rule for Deere in this case, we would accomplish little more than discouraging the occasional motions by plaintiffs to transfer inconvenient cases. Other plaintiffs would sue in an

inconvenient forum with the expectation that the defendants themselves would seek transfer to a convenient forum, resulting in application of the transferor law under *Van Dusen.* See Note, Choice of Law in Federal Court After Transfer of Venue, 63 Cornell L. Rev. 149, 156 (1977). In this case, for example, Deere might have moved for a transfer if the Ferenses had not.

## B

*Van Dusen* also sought to fashion a rule that would not create opportunities for forum shopping. Some commentators have seen this policy as the most important rationale of *Van Dusen*, see, *e. g.*, 19 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4506, p. 79 (1982), but few attempt to explain the harm of forum shopping when the plaintiff initiates a transfer. An opportunity for forum shopping exists whenever a party has a choice of forums that will apply different laws. The *Van Dusen* policy against forum shopping simply requires us to interpret § 1404(a) in a way that does not create an opportunity for obtaining a more favorable law by selecting a forum through a transfer of venue. In the *Van Dusen* case itself, this meant that we could not allow defendants to use a transfer to change the law. 376 U. S., at 636.

No interpretation of § 1404(a), however, will create comparable opportunities for forum shopping by a plaintiff because, even without § 1404(a), a plaintiff already has the option of shopping for a forum with the most favorable law. The Ferenses, for example, had an opportunity for forum shopping in the state courts because both the Mississippi and Pennsylvania courts had jurisdiction and because they each would have applied a different statute of limitations. Diversity jurisdiction did not eliminate these forum shopping opportunities; instead, under *Erie*, the federal courts had to replicate them. See *Klaxon Co.* v. *Stentor Electric Mfg. Co.*, 313 U. S., at 496 ("Whatever lack of uniformity *[Erie]* may produce between federal courts in different states is

attributable to our federal system, which leaves to a state, within the limits permitted by the Constitution, the right to pursue local policies diverging from those of its neighbors"). Applying the transferor law would not give a plaintiff an opportunity to use a transfer to obtain a law that he could not obtain through his initial forum selection. If it does make selection of the most favorable law more convenient, it does no more than recognize a forum shopping choice that already exists. This fact does not require us to apply the transferee law. Section 1404(a), to reiterate, exists to make venue convenient and should not allow the defendant to use inconvenience to discourage plaintiffs from exercising the opportunities that they already have.

Applying the transferee law, by contrast, might create opportunities for forum shopping in an indirect way. The advantage to Mississippi's personal injury lawyers that resulted from the State's then applicable 6-year statute of limitations has not escaped us; Mississippi's long limitation period no doubt drew plaintiffs to the State. Although *Sun Oil* held that the federal courts have little interest in a State's decision to create a long statute of limitations or to apply its statute of limitations to claims governed by foreign law, we should recognize the consequences of our interpretation of § 1404(a). Applying the transferee law, to the extent that it discourages plaintiff-initiated transfers, might give States incentives to enact similar laws to bring in out-of-state business that would not be moved at the instance of the plaintiff.

C

*Van Dusen* also made clear that the decision to transfer venue under § 1404(a) should turn on considerations of convenience rather than on the possibility of prejudice resulting from a change in the applicable law. See 376 U. S., at 636; *Piper Aircraft Co.* v. *Reyno*, 454 U. S. 235, 253–254, and n. 20 (1981). We reasoned in *Van Dusen* that, if the law changed following a transfer initiated by the defendant, a dis-

trict court "would at least be reluctant to grant transfers, despite considerations of convenience, if to do so might conceivably prejudice the claim of a plaintiff." 376 U. S., at 636. The court, to determine the prejudice, might have to make an elaborate survey of the law, including statutes of limitations, burdens of proof, presumptions, and the like. This would turn what is supposed to be a statute for convenience of the courts into one expending extensive judicial time and resources. Because this difficult task is contrary to the purpose of the statute, in *Van Dusen* we made it unnecessary by ruling that a transfer of venue by the defendant does not result in a change of law. This same policy requires application of the transferor law when a plaintiff initiates a transfer.

If the law were to change following a transfer initiated by a plaintiff, a district court in a similar fashion would be at least reluctant to grant a transfer that would prejudice the defendant. Hardship might occur because plaintiffs may find as many opportunities to exploit application of the transferee law as they would find opportunities for exploiting application of the transferor law. See Note, 63 Cornell L. Rev., at 156. If the transferee law were to apply, moreover, the plaintiff simply would not move to transfer unless the benefits of convenience outweighed the loss of favorable law.

Some might think that a plaintiff should pay the price for choosing an inconvenient forum by being put to a choice of law versus forum. But this assumes that § 1404(a) is for the benefit only of the moving party. By the statute's own terms, it is not. Section 1404(a) also exists for the benefit of the witnesses and the interest of justice, which must include the convenience of the court. Litigation in an inconvenient forum does not harm the plaintiff alone. As Justice Jackson said:

> "Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has

no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflicts of laws, and in law foreign to itself." *Gulf Oil Corp.* v. *Gilbert,* 330 U. S. 501, 508–509 (1947). The desire to take a punitive view of the plaintiff's actions should not obscure the systemic costs of litigating in an inconvenient place.

## D

This case involves some considerations to which we perhaps did not give sufficient attention in *Van Dusen.* Foresight and judicial economy now seem to favor the simple rule that the law does not change following a transfer of venue under § 1404(a). Affording transfers initiated by plaintiffs different treatment from transfers initiated by defendants may seem quite workable in this case, but the simplicity is an illusion. If we were to hold that the transferee law applies following a § 1404(a) motion by a plaintiff, cases such as this would not arise in the future. Although applying the transferee law, no doubt, would catch the Ferenses by surprise, in the future no plaintiffs in their position would move for a change of venue.

Other cases, however, would produce undesirable complications. The rule would leave unclear which law should apply when both a defendant and a plaintiff move for a transfer of venue or when the court transfers venue on its own motion. See Note, 63 Cornell L. Rev., at 158. The rule also might require variation in certain situations, such as when the plaintiff moves for a transfer following a removal from state court by the defendant, or when only one of several

plaintiffs requests the transfer, or when circumstances change through no fault of the plaintiff making a once convenient forum inconvenient. True, we could reserve any consideration of these questions for a later day. But we have a duty, in deciding this case, to consider whether our decision will create litigation and uncertainty. On the basis of these considerations, we again conclude that the transferor law should apply regardless of who makes the § 1404(a) motion.

## IV

Some may object that a district court in Pennsylvania should not have to apply a Mississippi statute of limitations to a Pennsylvania cause of action. This point, although understandable, should have little to do with the outcome of this case. Congress gave the Ferenses the power to seek a transfer in § 1404(a), and our decision in *Van Dusen* already could require a district court in Pennsylvania to apply the Mississippi statute of limitations to Pennsylvania claims. Our rule may seem too generous because it allows the Ferenses to have both their choice of law and their choice of forum, or even to reward the Ferenses for conduct that seems manipulative. We nonetheless see no alternative rule that would produce a more acceptable result. Deciding that the transferee law should apply, in effect, would tell the Ferenses that they should have continued to litigate their warranty action in Pennsylvania and their tort action in Mississippi. Some might find this preferable, but we do not. We have made quite clear that "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Continental Grain*, 364 U. S., at 26.

From a substantive standpoint, two further objections give us pause but do not persuade us to change our rule. First, one might ask why we require the Ferenses to file in the Dis-

trict Court in Mississippi at all. Efficiency might seem to dictate a rule allowing plaintiffs in the Ferenses' position not to file in an inconvenient forum and then to return to a convenient forum though a transfer of venue, but instead simply to file in the convenient forum and ask for the law of the inconvenient forum to apply. Although our rule may invoke certain formality, one must remember that § 1404(a) does not provide for an automatic transfer of venue. The section, instead, permits a transfer only when convenient and "in the interest of justice." Plaintiffs in the position of the Ferenses must go to the distant forum because they have no guarantee, until the court there examines the facts, that they may obtain a transfer. No one has contested the justice of transferring this particular case, but the option remains open to defendants in future cases. Although a court cannot ignore the systemic costs of inconvenience, it may consider the course that the litigation already has taken in determining the interest of justice.

Second, one might contend that, because no *per se* rule requiring a court to apply either the transferor law or the transferee law will seem appropriate in all circumstances, we should develop more sophisticated federal choice-of-law rules for diversity actions involving transfers. See Note, 75 Yale L. J., at 130–135. To a large extent, however, state conflicts-of-law rules already ensure that appropriate laws will apply to diversity cases. Federal law, as a general matter, does not interfere with these rules. See *Sun Oil*, 486 U. S., at 727–729. In addition, even if more elaborate federal choice-of-law rules would not run afoul of *Klaxon* and *Erie*, we believe that applying the law of the transferor forum effects the appropriate balance between fairness and simplicity. Cf. R. Leflar, American Conflicts Law § 143, p. 293 (3d ed. 1977) (arguing against a federal common law of conflicts).

For the foregoing reasons, we conclude that Mississippi's statute of limitations should govern the Ferenses' action.

We reverse and remand for proceedings consistent with this opinion.

It is so ordered.

JUSTICE SCALIA, with whom JUSTICE BRENNAN, JUSTICE MARSHALL, and JUSTICE BLACKMUN join, dissenting.

Plaintiffs, having filed this diversity action in Federal District Court in Mississippi, successfully moved for a transfer of venue to the District Court in Pennsylvania where their warranty action was then pending. The question we must decide is which State's choice-of-law principles will govern the case now that it is to be litigated in that court.

The Rules of Decision Act, first placed in the Judicial Code by the Judiciary Act of 1789, currently provides:

> "The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." 28 U. S. C. § 1652 (1982 ed.).

In *Erie R. Co.* v. *Tompkins*, 304 U. S. 64 (1938), we held that the Act requires a federal court to apply, in diversity cases, the law of the State in which it sits, both statutory law and common law established by the courts. Three years later, in *Klaxon Co.* v. *Stentor Electric Mfg. Co.*, 313 U. S. 487, 494 (1941), we considered "whether in diversity cases the federal courts must follow conflict of laws rules prevailing in the states in which they sit." We answered the question in the affirmative, reasoning that, were the rule otherwise, "the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side," a state of affairs that "would do violence to the principle of uniformity within a state, upon which the *Tompkins* decision is based." *Id.*, at 496. See also *Griffin* v. *McCoach*, 313 U. S. 498, 503 (1941). Although the venue provision of § 1404(a) was enacted after

*Klaxon*, see 62 Stat. 937, we have repeatedly reaffirmed *Klaxon* since then. See *Nolan* v. *Transocean Air Lines*, 365 U. S. 293 (1961); *Day & Zimmermann, Inc.* v. *Challoner*, 423 U. S. 3 (1975).

The question we must answer today is whether 28 U. S. C. § 1404(a) (1982 ed.) and the policies underlying *Klaxon*—namely, uniformity within a State and the avoidance of forum shopping—produce a result different from *Klaxon* when the suit in question was not filed in the federal court initially, but was transferred there under § 1404(a) on plaintiff's motion. In *Van Dusen* v. *Barrack*, 376 U. S. 612 (1964), we held that a result different from *Klaxon* is produced when a suit has been transferred under § 1404(a) on defendant's motion. Our reasons were two. First, we thought it highly unlikely that Congress, in enacting § 1404(a), meant to provide defendants with a device by which to manipulate the substantive rules that would be applied. 376 U. S., at 633–636. That conclusion rested upon the fact that the law grants the plaintiff the advantage of choosing the venue in which his action will be tried, with whatever state-law advantages accompany that choice. A defensive use of § 1404(a) in order to deprive the plaintiff of this "venue privilege," *id.*, at 634, would allow the defendant to "'get a change of law as a bonus for a change of venue,'" *id.*, at 636 (citation omitted), and would permit the defendant to engage in forum shopping among States, a privilege that the *Klaxon* regime reserved for plaintiffs. Second, we concluded that the policies of *Erie* and *Klaxon* would be undermined by application of the transferee court's choice-of-law principles in the case of a defendant-initiated transfer, *id.*, at 637–640, because then "the 'accident' of federal diversity jurisdiction" would enable the defendant "to utilize a transfer to achieve a result in federal court which could not have been achieved in the courts of the State where the action was filed," *id.*, at 638. The goal of *Erie* and *Klaxon*, we reasoned, was to prevent "forum shopping" as between state and federal systems; the plaintiff makes a

choice of forum law by filing the complaint, and that choice must be honored in federal court, just as it would have been honored in state court, where the defendant would not have been able to transfer the case to another State.

We left open in *Van Dusen* the question presented today, viz., whether "the same considerations would govern" if a plaintiff sought a § 1404(a) transfer. 376 U. S., at 640. In my view, neither of those considerations is served—and indeed both are positively defeated—by a departure from *Klaxon* in that context. First, just as it is unlikely that Congress, in enacting § 1404(a), meant to provide the defendant with a vehicle by which to manipulate in his favor the substantive law to be applied in a diversity case, so too is it unlikely that Congress meant to provide the *plaintiff* with a vehicle by which to appropriate the law of a distant and inconvenient forum in which he does not intend to litigate, and to carry that prize back to the State in which he wishes to try the case. Second, application of the transferor court's law in this context would encourage forum shopping between federal and state courts in the same jurisdiction on the basis of differential substantive law. It is true, of course, that the plaintiffs here did not select the *Mississippi* federal court in preference to the Mississippi state courts because of any differential substantive law; the former, like the latter, would have applied Mississippi choice-of-law rules and thus the Mississippi statute of limitations. But one must be blind to reality to say that it is the *Mississippi* federal court in which these plaintiffs have chosen to sue. That was merely a way station en route to suit in the *Pennsylvania* federal court. The plaintiffs were seeking to achieve exactly what *Klaxon* was designed to prevent: the use of a Pennsylvania federal court instead of a Pennsylvania state court in order to obtain application of a different substantive law. Our decision in *Van Dusen* compromised "the principle of uniformity within a state," *Klaxon, supra,* at 496, only in the abstract, but today's decision compromises it precisely in the respect that

matters—*i. e.*, insofar as it bears upon the plaintiff's choice between a state and a federal forum. The significant federal judicial policy expressed in *Erie* and *Klaxon* is reduced to a laughingstock if it can so readily be evaded through filing-and-transfer.

The Court is undoubtedly correct that applying the *Klaxon* rule after a plaintiff-initiated transfer would deter a plaintiff in a situation such as exists here from seeking a transfer, since that would deprive him of the favorable substantive law. But that proves only that this disposition achieves what *Erie* and *Klaxon* are designed to achieve: preventing the plaintiff from using "the accident of diversity of citizenship," *Klaxon*, 313 U. S., at 496, to obtain the application of a different law within the State where he wishes to litigate. In the context of the present case, he must either litigate in the State of Mississippi under Mississippi law, or in the Commonwealth of Pennsylvania under Pennsylvania law.

The Court expresses concern, *ante*, at 529–530, that if normal *Erie-Klaxon* principles were applied a district judge might be reluctant to order a transfer, even when faced with the prospect of a trial that would be manifestly inconvenient to the parties, for fear that in doing so he would be ordering what is tantamount to a dismissal on the merits. But where the plaintiff himself has moved for a transfer, surely the principle of *volenti non fit injuria* suffices to allay that concern. The Court asserts that in some cases it is the defendant who will be prejudiced by a transfer-induced change in the applicable law. That seems likely to be quite rare, since it assumes that the plaintiff has gone to the trouble of bringing the suit in a *less* convenient forum, where the law is *less* favorable to him. But where the defendant is disadvantaged by a plaintiff-initiated transfer, I do not see how it can reasonably be said that he has been "prejudiced," since the plaintiff could have brought the suit in the "plaintiff's-law forum" with the law more favorable to him (and the more convenient forum) in the first place. Prejudice to the defendant, it

seems to me, occurs only when the plaintiff is enabled to have his cake and eat it too—to litigate in the more convenient forum that he desires, but with the law of the distant forum that he desires.

The Court suggests that applying the choice-of-law rules of the forum court to a transferred case ignores the interest of the federal courts themselves in avoiding the "systemic costs of litigating in an inconvenient place," citing Justice Jackson's eloquent remarks on that subject in *Gulf Oil Corp.* v. *Gilbert*, 330 U. S. 501, 508–509 (1947). *Ante*, at 530. The point, apparently, is that these systemic costs will increase because the change in law attendant to transfer will not only deter the plaintiff from moving to transfer but will also deter the court from ordering *sua sponte* a transfer that will harm the plaintiff's case. Justice Jackson's remarks were addressed, however, not to the operation of § 1404(a), but to "those rather rare cases where the doctrine [of *forum non conveniens*] should be applied." 330 U. S., at 509. Where the systemic costs are that severe, transfer ordinarily will occur whether the plaintiff moves for it or not; the district judge can be expected to order it *sua sponte*. I do not think that the prospect of depriving the plaintiff of favorable law will any more deter a district judge from transferring[1] than it would have deterred a district judge, under the prior regime, from ordering a dismissal *sua sponte* pursuant to the doctrine of *forum non conveniens*. In fact the deterrence to *sua sponte* transfer will be considerably less, since transfer involves no risk of statute-of-limitations bars to refiling.

---

[1] The prospective transferor court would not be deterred at all, of course, if we simply extended the *Van Dusen* rule to court-initiated transfers. In my view that would be inappropriate, however, since court-initiated transfer, like plaintiff-initiated transfer, does not confer upon the defendant the advantage of forum shopping for law, *Van Dusen* v. *Barrack*, 376 U. S. 612, 636 (1964), and does not enable the defendant "to utilize a transfer to achieve a result in federal court which could not have been achieved in the courts of the State where the action was filed," *id.*, at 638.

Thus, it seems to me that a proper calculation of systemic costs would go as follows: Saved by the Court's rule will be the incremental cost of trying in forums that are inconvenient (but not so inconvenient as to prompt the court's *sua sponte* transfer) those suits that are now filed in such forums for choice-of-law purposes. But incurred by the Court's rule will be the costs of considering and effecting transfer, not only in those suits but in the indeterminate number of additional suits that will be filed in inconvenient forums now that filing-and-transfer is an approved form of shopping for law; plus the costs attending the necessity for transferee courts to figure out the choice-of-law rules (and probably the substantive law) of distant States much more often than our *Van Dusen* decision would require. It should be noted that the file-and-transfer ploy sanctioned by the Court today will be available not merely to achieve the relatively rare (and generally unneeded) benefit of a longer statute of limitations, but also to bring home to the desired state of litigation all sorts of favorable choice-of-law rules regarding substantive liability—in an era when the diversity among the States in choice-of-law principles has become kaleidoscopic.[2]

The Court points out, apparently to deprecate the prospect that filing-and-transfer will become a regular litigation strategy, that there is "no guarantee" that a plaintiff will be accorded a transfer; that while "[n]o one has contested the justice of transferring this particular case," that option "remains open to defendants in future cases"; and that "[a]lthough a court cannot ignore the systemic costs of inconvenience, it may consider the course that the litigation already has taken in determining the interest of justice." *Ante*, at 532. I am

---

[2]The current edition of Professor Leflar's treatise on American Conflicts Law lists 10 separate theories of choice of law that are applied, individually or in various combinations, by the 50 States. See R. Leflar, L. McDougall III, & R. Felix, American Conflicts Law §§ 86–91, 93–96 (4th ed. 1986). See also Kay, Theory into Practice: Choice of Law in the Courts, 34 Mercer L. Rev. 521, 525–584, 591–592 (1983).

not sure what this means—except that it plainly does not mean what it must mean to foreclose the filing-and-transfer option, namely, that transfer can be denied because the plaintiff was law shopping. The whole theory of the Court's opinion is that it is not in accord with the policy of § 1404(a) to deprive the plaintiff of the "state-law advantages" to which his "venue privilege" entitles him. *Ante*, at 524. The Court explicitly repudiates "[t]he desire to take a punitive view of the plaintiff's actions," *ante*, at 530, and to make him "pay the price for choosing an inconvenient forum by being put to a choice of law versus forum," *ante*, at 529. Thus, all the Court is saying by its "no guarantee" language is that the plaintiff must be careful to choose a *really inconvenient* forum if he wants to be sure about getting a transfer. That will often not be difficult. In sum, it seems to me quite likely that today's decision will cost the federal courts more time than it will save them.

Thus, even as an exercise in giving the most extensive possible scope to the policies of § 1404(a), the Court's opinion seems to me unsuccessful. But as I indicated by beginning this opinion with the Rules of Decision Act, that should not be the object of the exercise at all. The Court and I reach different results largely because we approach the question from different directions. For the Court, this case involves an "interpretation of § 1404(a)," *ante*, at 524, and the central issue is whether *Klaxon* stands in the way of the policies of that statute. For me, the case involves an interpretation of the Rules of Decision Act, and the central issue is whether § 1404(a) alters the "principle of uniformity within a state" which *Klaxon* says that Act embodies. I think my approach preferable, not only because the Rules of Decision Act does, and § 1404(a) does not, address the specific subject of which law to apply, but also because, as the Court acknowledges, our jurisprudence under that statute is "a vital expression of the federal system and the concomitant integrity of the separate States," *ante*, at 523. To ask, as in effect the Court

does, whether *Erie* gets in the way of § 1404(a), rather than whether § 1404(a) requires adjustment of *Erie*, seems to me the expression of a mistaken sense of priorities.

For the foregoing reasons, I respectfully dissent.