**TEACHER RETIREMENT
SYSTEM OF TEXAS,**

v.

**REILLY MORTGAGE GROUP, INC.**

No. A 93 CA 480 SS.

United States District Court,
W.D. Texas,
Austin Division.

April 14, 1994.

James T. McCartt, Susman, Godfrey & McGowan, F. Eric Fryar, Susman Godfrey, Houston, TX, Jeffrey R. Seckel, Hale, Spencer, Pronske & Trust, Dallas, TX, Kenneth E. McNeil, Susman Godfrey, L.L.P., Houston, TX, for plaintiff.

Eric J. Taube, Hohmann, Werner & Taube, Austin, TX, Martin J. Jaron, Jr., Saul Jay Singer, Ginsburg, Feldman & Bress, Washington, DC, for Reilly Mortg. Group, Inc.

*ORDER*

SPARKS, District Judge.

BE IT REMEMBERED that on the 14th of April, 1994 the Court examined the file in the above-captioned matter. Currently before the Court is Defendant Reilly Mortgage's "Motion To Dismiss Or, In The Alternative, To Stay," filed August 10, 1993 and Plaintiff Teachers Retirement System of Texas' "Alternative Motion to Add Additional Parties." After reviewing these motions and all the relevant pleadings, the Court issues the following order.

*Background*

Plaintiff, Teacher Retirement System of Texas (hereinafter "TRST"), filed this cause in the 98th Judicial District Court of Travis County, Texas, on July 21, 1993. On diversity grounds, Defendant Reilly Mortgage (hereinafter "Reilly") removed to this Court on August 12, 1993.[1] On August 18, Reilly filed, *inter alia*, its "Motion To Dismiss Or In The Alternative To Stay." Two days after TRST filed suit in Travis County, Texas, Reilly filed a declaratory judgment action against TRST and Riggs National Bank of Washington, D.C. in the Superior Court of the District of Columbia. TRST later removed the declaratory judgment action to the Federal District Court of the District of Columbia, contending Riggs is merely a nominal party and does not defeat diversity. On September 9, 1993, two days after the removal, TRST filed three motions in the D.C. Federal District Court. One motion challenges that Court's personal jurisdiction over TRST. Another motion seeks a 12(b)(6) dismissal or, in the alternative, a stay of proceedings until the disposition of the suit in this Court. A third motion moves the D.C. Court to transfer the case to this Court pursuant to 28 U.S.C. § 1404(a). Suffice it to say that Reilly and TRST are not afraid to file motions and have impressed four different forums with their motion-filing abilities. Upon observing the parties' calculated ma-

1. Plaintiff is an agency, but not an alter ego, of the State of Texas. Defendant is a District of Columbia corporation with its principal place of business in Virginia.

neuvers in this case it appears they have lost sight of their intention to have these claims adjudicated. As Justice Frankfurter so aptly stated, "[l]itigation is the pursuit of practical ends, not a game of chess." *Indianapolis v. Chase Nat'l Bank,* 314 U.S. 63, 69, 62 S.Ct. 15, 16, 86 L.Ed. 47 (1941).

The dispute in both cases arises out of a Trust and Servicing Agreement (hereinafter, "Trust Agreement") between Reilly and Riggs National Bank of Washington, D.C. (hereinafter, "Riggs"), dated April 1, 1984, in which Riggs acted as trustee for TRST. Reilly's first argument for dismissal, pursuant to Rule 12(b)(6), asserts TRST's complaint fails to allege compliance with Article X, Section 10.02 of the Trust Agreement. That provision requires TRST to request, in writing, that Riggs file suit against Reilly. If Riggs declines or fails to act within sixty days, TRST can initiate its own suit against Reilly.[2] Secondly, Reilly moves for dismissal under Rule 12(b)(7) arguing Riggs is a necessary and indispensable party under Rule 19 of the Federal Rules of Civil Procedure. Finally, in the event the court rejects its 12(b)(6) and (7) claims, Defendant alternatively argues this cause should be stayed until the Superior Court of the District of Columbia resolves the aforementioned cause filed by Defendant involving the same parties (with the addition of Riggs) and, according to Defendant, identical issues.[3]

*Discussion*

**\* 12(b)(6) Dismissal**

 In no uncertain terms, TRST has sued Reilly for its performance under the Trust Agreement with Riggs. The Court has ignored any implications to the contrary. Hence, Article X, Section 10.02 of the Trust Agreement is inescapable and there is a seri-

ous question as to whether TRST filed suit in violation of this provision. Further, despite TRST's contentions, Reilly has rightfully raised this claim of lack of standing or capacity in a 12(b)(6) motion. A challenge to standing or capacity to sue can, in many cases, be determined from the face of the pleadings and therefore falls within the ambit of a Rule 12(b)(6) motion. *See* 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1360, at 433–436 (1990). In this case, however, TRST has responded to Reilly's 12(b)(6) motion by arguing that a waiver of Article X, Section 10.02 occurred. Whether a waiver indeed occurred is a matter outside the pleadings and converts this issue into one appropriately decided in the context of a motion for summary judgment. In refuting TRST's waiver claim, Reilly attempts to proffer evidence, including the testimony of Counsel for Riggs (Reilly's Reply to Plaintiff's Replies at 5, n. 7). Clearly this evidence goes beyond the face of the complaint and must be offered as part of a summary judgment motion.

Finally, though lack of standing or capacity has prompted dismissal in some cases, if Reilly successfully proved a violation of Article X, Section 10.02 with a motion for summary judgment, the Court would likely permit abatement of the proceedings until TRST complied with that provision. As long as there is no jurisdictional defect, the Court sees no practicality in dismissing a suit without prejudice when abatement will suffice.

For the above-stated reasons, the Court will deny Reilly's motion to dismiss under Rule 12(b)(6).

**\* 12(b)(7) Dismissal**

Reilly also alleges Riggs is a necessary and indispensable plaintiff to this suit and be-

---

**2.** In its Reply to Plaintiff's "Amended Reply," filed October 21, 1993, Reilly for the first time asserts an additional claim, assumably under Rule 12(b)(6), for dismissal on the grounds that the action is moot. That argument states Reilly has turned over to TRST the very debentures it seeks to recover in this action. Notwithstanding the fact that Reilly failed to include this claim in its original 12(b)(6) motion, the Court deems this claim to be suitably asserted in a motion for summary judgment as it calls for evidence beyond the face of the complaint.

**3.** Actually, as stated *supra,* the case has been removed and is now pending before the Federal District Court in the District of Columbia. Reilly, as plaintiff in that case, has contested removal—again claiming Riggs' indispensability and, consequently, lack of diversity—and would prefer to have the case remanded to the D.C. Superior Court.

cause joinder of Riggs would destroy the Court's jurisdiction, the cause should be dismissed under 12(b)(7). In response, TRST asserts Riggs is not indispensable and, if it is, the cause should not be dismissed but remanded to State court under 28 U.S.C. § 1447(e).

■ In arguing the indispensability of Riggs, Reilly again relies on TRST's alleged violation of Article X, Section 10.02. It is Reilly's position that because TRST did not acquire Riggs' permission to sue under that clause, Riggs, not TRST, is the only entity with the power to bring suit. Reilly therefore asserts Riggs is indispensable and TRST is unnecessary—or, at least, improperly before the Court. As discussed above, TRST's waiver claim takes this issue outside the pleadings and it is therefore unsuitable for dismissal under Rule 12(b). In addition, under the doctrine of joinder and indispensable parties, it is the Court's obligation to seek means other than dismissal to resolve the problem of indispensability. *See Curley v. Brignoli, Curley & Roberts Assoc.,* 915 F.2d 81, 90 (2d Cir.1990), *cert. denied,* 499 U.S. 955, 111 S.Ct. 1430, 113 L.Ed.2d 484 (1991) (finding that district court could, without dismissal, cure potential prejudice caused to absent party); *Matter of Estate of Van Dyke,* 772 P.2d 1049, 1052, 54 Wash.App. 225 (1989) (remanding for reconsideration under Rule 19(b) and citing the strong policy favoring resolution of disputes before the court in lieu of dismissal); *also see* 7 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1609 at 130 (1986) (describing federal courts' reluctance to grant motions to dismiss based on nonjoinder). Applying the theory presented by Reilly here, the Court can make Riggs dispensable by permitting abatement and allowing TRST additional time to jump through the necessary hoops of Article X, Section 10.02.

More persuasive is Reilly's theory that Riggs' indispensability arises from its relationship to Reilly under the Trust Agreement and its role as TRST's trustee in that agreement. In support of this proposition, Reilly cites several stale cases concerning the indispensability of trustees.[4] Although these case are still good law, they fail to apply the modern, practical construction of Rule 19(a) and (b). Reilly's reliance on these cases is especially troublesome considering the fact that they were all decided before the 1966 amendment of Rule 19(b), an amendment which "has had a pronounced effect on the thinking of the courts", and before the Supreme Court's landmark construction of Rule 19(b) in *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). 7 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1608 at 93 (1986). A quick study of *Provident Tradesmens* and it progeny would have apprised Reilly of the need to diligently apply the criteria set forth under Rule 19(a) and (b) to determine indispensability.

■ Despite Reilly's disregard for the specific criteria of Rule 19(a) and (b), the Court finds some merit in its averment of indispensability due to Riggs' privity to the Trust Agreement. The Court cannot determine whether a party is indispensable under 19(b) before determining whether the parties are necessary for just adjudication under 19(a).[5] While it is true that TRST, as the sole beneficiary under the Trust Agreement, may be accorded complete relief in Riggs' absence, this is not the only concern of 19(a). Fed. R.Civ.Pro. 19(a)(1). It is undisputed that Riggs served as trustee and signed the Trust Agreement on behalf of TRST. In light of this fact, Riggs has an interest relating to the

---

**4.** Reilly's Memorandum of Points and Authorities cites *Harmony Corporation v. Penick,* 192 A.2d 301, 303 (D.C.App.1963); *Baker v. Dale,* 123 F.Supp. 364, 369 (W.D.Mo.1954); and *Green v. Brophy,* 110 F.2d 539 (D.C.App.1940). *See* Memorandum of Points and Authorities at 10–11, n. 7 and 8.

**5.** The undersigned construes *Provident Tradesmens* as requiring the courts to proceed sequentially under Rule 19, first determining the appli-

cability of 19(a) and then proceeding under 19(b) to resolve the issue when joinder is infeasible. In fact, the language of 19(b) clearly states that 19(b) applies only to parties who have satisfied the criteria of 19(a)(1)–(2). *See Pulitzer–Polster v. Pulitzer,* 784 F.2d 1305, 1309 (5th Cir.1986) (finding that Rule 19 requires a two-step analysis; it is necessary to apply 19(a) before proceeding to 19(b)).

subject of the action, i.e. its execution of the Trust Agreement, and is "so situated that the disposition of the action in [Riggs'] absence may ... as a practical matter impair or impede [Riggs'] ability to protect that interest." Fed.R.Civ.Pro. 19(a)(2)(i).

Because Riggs, not TRST, was in privity of contract with Reilly, its performance of obligations under the Trust Agreement will, in all probability, become a primary issue in this case. Reilly's defense depends, in part, on Riggs' performance under the agreement. Indeed, Riggs' execution of the terms of the Trust Agreement has already been placed in issue by the parties. TRST has claimed Riggs expressly or implicitly waived Article X, Section 10.02 of the Trust Agreement. Thus, in deciding this case, the Court could determine Riggs breached the Trust Agreement or was negligent in signing or performing the contract and absolve Reilly of liability. Such a finding could be unfairly detrimental to Riggs. Although there is no danger of issue preclusion in the case pending in Washington, D.C., a negative precedent could impair Riggs in that litigation; that is, assuming this case is decided first. *See Pulitzer–Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir.1986) (holding that a negative precedent can cause enough prejudice to an absentee for a finding of indispensability under Rule 19). In addition, if the D.C. Court acknowledged the precedent of this Court and ruled similarly, then TRST could use that holding offensively (i.e. issue preclusion

could ensue) in a subsequent suit against Riggs for negligence or breach of fiduciary duty.[6]

For the above-stated reasons, the Court concludes that Riggs is a necessary party under Rule 19(a). It is now essential to determine whether Riggs is indispensable under 19(b).

■ The addition of Riggs as a party plaintiff will undoubtedly destroy diversity and the Court's subject matter jurisdiction over this case. The Court must therefore confront another critical decision: whether to dismiss the case or proceed without Riggs, which it has already determined to be a necessary party. Fortunately, Rule 19(b) provides some guidance for making this decision. The guidelines under 19(b) are not unlike the criteria of 19(a). The major difference is that 19(b) emphasizes the district courts' discretion and simply encourages them to reach a practical, well-reasoned decision. Although the rule provides what appear to be four specific criteria, these are not meant to control the courts' analysis, they are merely intended as guidelines for rendering a decision that manifests "equity and good conscience." The guidelines do not exclude additional practical considerations.[7]

■ The first factor for consideration under 19(b), the extent to which "a judgment rendered in the person's absence might be prejudicial to him or those already parties,"

---

**6.** Also worth noting is the fact that TRST has moved for dismissal from and has challenged the personal jurisdiction of the Washington, D.C. forum. If TRST acquires dismissal or successfully challenges jurisdiction, the declaratory judgment in Washington, D.C., in which Riggs is a party, will disappear. If that suit disappears, this Court could deem Riggs an indispensable party for additional reasons. Because it would no longer be a party in another lawsuit involving the same claims, Riggs could possibly bring a subsequent action against Reilly for the identical claims alleged by TRST in this action. This would subject Reilly to "double obligations" as described in 19(a)(2)(ii). Nonetheless, this would probably not be considered a "substantial risk" to Reilly (also required under 19(a)(2)(ii)). Odds are that Riggs would be precluded from pursuing such an action due to its privity with TRST, as Trustee under the Trust Agreement, in the first lawsuit. Even so, the Supreme Court has yet to declare whether an absentee can be bound by a judg-

ment in a lawsuit it could have rightfully entered under Fed.Rule Civ.Pro. 24(a). *See Provident Tradesmens*, 390 U.S. at 113, 88 S.Ct. at 740 (refusing to decide whether a judgment binds an absentee who could have intervened under Rule 24(a)).

**7.** After the 1966 amendments to Rule 19(b), the courts have abandoned the technical application of the rule in favor of a rational, discretionary approach. *See Provident Tradesmens*, 390 U.S. at 119, n. 16, 88 S.Ct. at 743, n. 16 (criticizing the Courts of Appeals' reliance on inflexible formulas rather than a pragmatic analysis in pre–1966 cases); *Broussard v. Columbia Gulf Transmission Co.*, 398 F.2d 885, 889 (5th Cir.1968) (declaring, "the pragmatical approach elevates the role of judgmental discretion in the joinder problem"); *Bethell v. Peace*, 441 F.2d 495, 496 (5th Cir.1971) (stressing the need for a "pragmatic analysis of a potential party's absence").

mirrors the criterium of Rule 19(a)(2)(i). Like 19(a)(2)(i), it calls for an assessment of the judgment's potential impact on the absentee. To aid in this assessment, the official comments to the Rule pose this question: "[w]ould the absentee be adversely affected in a practical sense, and if so, would the prejudice be immediate and serious, or remote and minor?" Fed.R.Civ.Pro. 19 advisory committee's note. For the same reasons set forth in the Court's analysis under 19(a)(2)(i) above, the undersigned deems the potential impact of judgment in this case on the absentee Riggs to be immediate and serious enough to cause prejudice under 19(b).

■ The second factor of 19(b) specifically commissions the Court to seek alternatives that would avoid or mitigate any potential prejudices to the parties or the absentee. At this time it is impossible to determine what collateral affect the Court's judgment might have on Riggs and take action to avoid or mitigate any resulting prejudice. There will come a point during the trial, perhaps after presentation of the case in chief, when the Court can comfortably predict whether there will be such an impact and, if so, its severity. It would, however, be impractical to cause the parties to incur the additional litigation costs and expenses only to dismiss the case at that time. For these reasons, at this point there is no practical measure the Court can take to avoid or mitigate the potential prejudice to Riggs.

■ Next, under the third factor enumerated, 19(b) directs the Court to consider adequacy of judgment. This factor resembles the criterium of 19(a)(1) and, as expressed above, the Court sees no reason why the present parties cannot be accorded complete relief or an adequate judgment in Riggs' absence. Thus, consideration of the third factor does not hinder the Court's proceeding to judgment without Riggs.

■ Finally, the fourth factor instructs the Court's consideration of "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." Often this question hinges on whether there is an alternative forum in which all interested parties can be joined. Of course, in this case, that forum may already exist in the District of Columbia. It should be noted, however, that this factor merges with the second factor under 19(b) in that it directs the Court to consider alternatives, namely an alternative forum, that would avert or lessen prejudice to the plaintiff. The Court should thus determine whether dismissal of this case or deferral to another forum is an equitable alternative that suitably averts or lessens the prejudice against plaintiff.

Mindful of the paramount concern for equity, the Court cannot ignore the pertinence of 28 U.S.C. 1447(e). Section 1447(e), a recent addition to the statute, seeks equity in cases similar to this where, following a defendant's removal to federal court, there exists an indispensable party who destroys subject matter jurisdiction. The Court does not wish to confound the fourth factor of Rule 19(b) with 28 U.S.C. 1447(e) but wishes only to achieve the common goal of equity that both rules envision.

In view of the equitable concerns of Rule 19(b) and § 1447(e) and under the circumstances, the Court considers this case to be suitable for remand. Above, the Court noted Reilly's reliance on archaic caselaw in support of its argument for indispensability under Rule 19(a) and (b). Equally puzzling is TRST's citation of antiquated cases when attempting to convince the Court of the virtues of remand. As with Reilly, there is nothing fundamentally inaccurate about the authority cited, but it precedes a significant amendment to the statute. Curiously, as noted in Reilly's reply brief, the cases relied upon by TRST interpret § 1447(c) not § 1447(e). The latest opinion cited by TRST was decided in 1978; Congress did not add § 1447(e) until 1988. TRST also inaccurately interprets § 1447(e) by declaring that it prohibits the Court from dismissing the case (See TRST's "Amended Reply to FRCP 19 Motion to Dismiss" at 3). To the contrary, § 1447(e) merely asserts it is within the Court's discretion to dismiss the case or remand it.

Despite TRST's misconstruction of § 1447(e), the Court, having undertaken its own review of the statute and its interpretive

authority, considers this case appropriate for remand. Congress added section § 1447(e) to "temper the potential harshness of outright involuntary dismissal of removed diversity actions under Fed.R.Civ.P. 19(b) for inability to join indispensable non-diverse parties." *Templeton v. Nedlloyd Lines,* 901 F.2d 1273, 1275 (5th Cir.1990).[8] Virtually every case construing section 1447(e) involves a plaintiff who, after the defendant's removal, attempts to join a non-diverse defendant. In fact, section § 1447(e) does not refer to additional plaintiffs sought to be joined, only defendants.[9] Hence, the analysis has typically determined whether the plaintiff's joinder of a defendant is not fraudulent. *Hensgens v. Deere & Co.,* the paramount Fifth Circuit case on this matter, instructs the courts determining the propriety of joinder and remand to consider: 1) whether the primary purpose of joinder is to defeat federal jurisdiction; 2) whether the plaintiff has diligently requested the addition of a party; 3) whether the plaintiff will be prejudiced if the amendment is denied; and 4) "any other factors bearing on the equities." *Hensgens v. Deere & Co.,* 833 F.2d 1179, 1182 (5th Cir.1987).[10]

This case differs from the typical section 1447(e) case in that the defendant, not the plaintiff, has initiated the argument that an absent, indispensable party exists. Only after Riggs filed its Motion to Dismiss did TRST file its "Alternative Motion to Add Additional Parties."[11] Because the Defen-

dant has averred the absentee is indispensable, the Court need not examine the fraudulent joinder issue nor consider whether the Plaintiff was dilatory in filing its motion to add a new party. Hence, under *Hensgens,* it progeny, and the caselaw construing section 1447(e) and Rule 19(b), the Court need only consider whether denial of remand would be prejudicial to the plaintiff and whether any other factors might affect the equities in this case.

The most obvious factor affecting the prejudice to the plaintiff and the equities is the pending declaratory judgment suit in the District of Columbia. If the Court were to grant a dismissal, TRST would have two options: waive jurisdiction in Texas and fully litigate its cause as a defendant in the pending declaratory judgment action *or* re-file in the Texas courts after joining Riggs as a party.

It is clear from the pleadings that TRST does not wish to litigate this matter in the District of Columbia. As noted above, TRST has moved to dismiss the cause pending before in that forum, has challenged that forum's personal jurisdiction over it, and has contested venue there on the basis of convenience. The Court recognizes the policy against depriving a plaintiff of its chosen forum. Both federal and Texas courts have prevented defendants from seeking declaratory relief when defendants' sole purpose is to bereave the plaintiff of its selected forum

---

**8.** Interestingly, the legislative history of section 1447(e) echoes the same notions of equity and judicial discretion expressed by the Fifth Circuit Court of Appeals in *Hensgens v. Deere & Co.,* decided the year before the addition of 1447(e). *Hensgens v. Deere & Co.,* 833 F.2d 1179 (5th Cir.1987), *cert. denied,* 493 U.S. 851, 110 S.Ct. 150, 107 L.Ed.2d 108 (1989).

**9.** For this reason it is arguable whether section 1447(e) applies to this case. Even so, the Court cannot ignore the statute's assertion that remand is viable in removal cases under 19(b) when it achieves the greatest equity.

**10.** As stated in note 8 *supra, Hensgens* was decided one year before the addition of section 1447(e) and that Court was construing § 1447(c). Nevertheless, the decision remains good law and accurately reflects the discretion to be accorded to the district courts under 1447(e) and the statute's emphasis on equity. *See Templeton,* 901 F.2d at 1273 (showing the legislative history of

1447(e) to comport with the policy considerations set forth in *Hensgens* ); *Tillman v. CSX Transportation,* 929 F.2d 1023, 1029 (5th Cir. 1991) (noting the discretion permitted under 1447(e) and citing *Hensgens* as authority), *cert. denied,* —— U.S. ——, 112 S.Ct. 176, 116 L.Ed.2d 139 (1991).

**11.** In its "Alternative Motion To Add Additional Parties," filed September 15, 1993, TRST requests the joinder of Riggs if the Court deems Riggs an indispensable party. Not surprisingly, Reilly neglected to reply to this motion. Reilly filed an "Opposition to Plaintiff's Motion In The Alternative To Add Additional Party" on October 21, 1993. This pleading is completely bereft of any argument to support its "opposition." Any convincing reply would almost certainly have to embrace the argument that Riggs is dispensable and need not be joined as a party.

and substitute a forum more favorable to them. *See Allendale Mut. Ins. v. Bull Data Systems,* 10 F.3d 425, 431 (7th Cir.1993) (upholding district court's dismissal of declaratory judgment action "aimed solely at wresting choice of forum from 'natural' plaintiff); *Kirkbride v. Continental Cas. Co.,* 933 F.2d 729, 734–735 (affirming district court's refusal of jurisdiction when party was attempting to use the Declaratory Judgment Act to deprive a plaintiff of his selected forum or encourage a race to judgment); *Abor v. Black,* 695 S.W.2d 564, 566 (Tex.1985) (holding that the trial court should have declined jurisdiction in declaratory action to avoid depriving "real plaintiff of traditional right to choose time and place of suit"); *Space Master Int'l, Inc. v. Porta–Kamp Mfg. Co., Inc.,* 794 S.W.2d 944, 948 (Tex.App.—Houston [1st Dist.] 1990, no writ) (proclaiming that parties should not be permitted to use declaratory relief as a forum-shopping device).

In this case, Reilly filed for declaratory relief in the Washington, D.C. forum two days after TRST filed in Travis County, Texas. There is no apparent reason for Reilly's filing suit in the Superior Court of the District of Columbia other than to deprive TRST of its chosen forum in Travis County, Texas. If, as Reilly alleges, the Texas forum is in-

convenient, then a motion pursuant to 28 U.S.C. 1404(a) would have been appropriate after removal.[12] On the face of the complaint, notwithstanding any allegations that TRST filed in violation of Article X Section 10.02, TRST won the race to the courthouse and properly selected a Texas forum. Consequently, in light of the policy favoring plaintiff's selection of forum, the Court agrees with TRST that it should not be compelled to try this case in the District of Columbia. Accordingly, the Court will deny Reilly's alternative motion to stay these proceedings until the conclusion of the declaratory judgment action.

The Court considers TRST's other alternative upon dismissal, re-filing this case in a Texas district court, to be unnecessary and unduly burdensome to both parties. Both parties have undertaken a considerable amount of discovery in this case and have exerted great efforts in briefing the facts and points of law. The discovery and briefs will be preserved for the state court on remand, but lost upon dismissal.

The district courts have the discretion to grant remand instead of dismissal whenever the governing statute confers that authority.[13] As discussed above, § 1447(e) clearly

12. Reilly may have feared the application of the law of the transferor court (i.e. Texas law) after the § 1404(a) transfer. *See, e.g., Ferens v. John Deere Co.,* 494 U.S. 516, 527, 110 S.Ct. 1274, 1285, 108 L.Ed.2d 443 (1990). This fear would be unfounded, however, as Texas law generally recognizes contractual choice of law clauses such as 10.03 in the Trust Agreement; a clause that stipulates the agreement will be construed in accordance with the laws of the District of Columbia. *See State Nat'l Bank v. Academia, Inc.,* 802 S.W.2d 282, 289 (Tex.App.—Corpus Christi 1990, writ den'd); *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 421 (Tex.1984). *Ferens v. John Deere Co., supra,* also relates to this case in its criticism of defensive forum shopping. While discussing the Court's earlier decision in *Van Dusen v. Barrack,* Justice Scalia's dissent declares, "a defendant's use of § 1404(a) to deprive a plaintiff of [her] 'venue privilege' ... would permit the defendant to engage in forum shopping among States, a privilege that the *Klaxon* regime reserved for plaintiffs." *Ferens v. John Deere Co.,* 494 U.S. at 527, 110 S.Ct. at 1285 (Scalia, J., *dissenting* ) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)). Reilly's use of the declaratory judgment in this case is not unlike the defendant's

use of § 1441(a) in *Van Dusen;* it appears to be the type of defensive forum shopping frowned upon by the Supreme Court.

13. This rule is commonly referred to as the rule of *Thermtron.* In *Thermtron Products, Inc. v. Hermansdorfer,* the Supreme Court held that the district court exceeds its authority when it remands a case on grounds not expressly permitted by the controlling statute. *Thermtron Products, Inc. v. Hermansdorfer,* 423 U.S. 336, 351, 96 S.Ct. 584, 593, 46 L.Ed.2d 542 (1976); *see Buchner v. FDIC,* 981 F.2d 816, 820 (5th Cir.1993) (explaining and affirming the rule of *Thermtron*). The *Thermtron* Court held that the district court abused its discretion when it remanded a case over which it had diversity jurisdiction. Of course, with the addition of Riggs as an indispensable party, this Court will lose its diversity jurisdiction. For other cases defining the district courts' discretion to remand, *see Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *McDermott Int'l v. Lloyds Underwriters of London,* 944 F.2d 1199 (5th Cir. 1991); *Henry v. Independent American Sav. Ass'n,* 857 F.2d 995 (5th Cir.1988); *Tex. Hosp. Ass'n v. National Heritage Ins. Co.,* 802 F.Supp. 1507 (W.D.Tex.1992).

gives the district courts the option to remand when a post-removal development destroys the courts' diversity (or subject matter) jurisdiction.[14] Therefore, considering the equities and recognizing the need to preserve judicial resources and expedite the adjudication of claims, the Court remands this cause to the 98th Judicial District Court of Travis County, Texas.

### Conclusion and Order

Because the Court deems Riggs an indispensable party under Rule 19 of the Fed. R.Civ.Pro. and the addition of Riggs would destroy diversity jurisdiction, this case will be remanded pursuant to Rule 19 and 28 U.S.C. § 1447(e). Both the rule and the statute authorize the Court to assess the equities of the case and decide whether remand is appropriate.

Therefore, the Court enters the following orders:

IT IS ORDERED that Defendant's "Motion to Dismiss Or, In The Alternative, To Stay," filed August 18, 1993, is DENIED.

IT IS ORDERED that Plaintiff's "Alternative Motion to Add Additional Parties," filed September 15, 1993, is GRANTED, and Plaintiff SHALL JOIN Riggs as an indispensable party pursuant to Fed.R.Civ.Pro. 19.

IT IS ORDERED that this cause SHALL BE REMANDED to the 98th Judicial District Court of Travis County, Texas, for further adjudication pursuant to Fed.Rule Civ. Pro. 19 and 28 U.S.C. § 1447(e) as soon the Riggs National Bank receives service of process and appears (or files pleadings) in this cause.

---

14. Reilly's brief also concedes the Court's discretion to remand in lieu of dismissal (Reilly's Reply Brief at 15).