Thomas **PETERSON**, Plaintiff,

v.

**DAKA INTERNATIONAL, INC.**, Defendant.

No. Civ.A.98–74569.

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 9, 1999.

**636**

David K. Watsky, Edmond S. Moreland, Jr., Gillespie, Rozen & Watsky, PC, Dallas, TX, for plaintiff.

Martha W. Atwater, Rodrick W. Lewis, Warner, Norcross & Judd LLP, Grand Rapids, MI, for defendant.

## OPINION AND ORDER

FEIKENS, District Judge.

### I. INTRODUCTION

Plaintiff Thomas Peterson (Peterson) alleges fraud and negligent misrepresentation arising out of a conversation between him and William Freeman (Freeman), a vice-president with defendant Daka International, Inc. (Daka). Peterson, who was an at-will employee of Daka, claims that Freeman gave Peterson certain assurances regarding Peterson's job security. As a result of those alleged assurances, Peterson forwent a job offer from another company. He seeks to recover damages in the amount of the salary and benefits he would have made had he accepted the other company's offer.

Daka has filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c) contending that plaintiff cannot demonstrate a triable issue of fact as to the requisite elements of either the fraud or negligent misrepresentation claims.

### II. BACKGROUND

In July, 1996, Daka was involved in negotiations with K–Mart Corporation (K–Mart) regarding a joint venture in which the two companies would form a third company to manage restaurants in K–Mart retail stores (the so-called "K–Café" venture). While negotiations were still pending, Freeman, who was the prospective president of the joint venture company, hired Peterson as a Daka employee and the prospective regional vice-president for the joint venture company. The details of Peterson's employment were contained in a letter from Freeman to Peterson dated July 26, 1996. In addition to detailing Peterson's salary and benefits, the letter contained the following statement:

9. If, after the routine 90–day new associate probationary period ends, your employment is involuntarily ended for any reason other than for cause, you will receive up to one year of base salary, not to extend beyond July 29, 1997.

Peterson started work with Daka on July 29, 1996, and the 90–day probationary period would have expired on approximately October 27, 1996.

On September 18, 1996, K–Mart and Daka announced that the plans for a joint venture would not be completed and that negotiations had terminated. On September 26, 1996, still within the 90–day probationary period, Freeman sent Peterson a letter giving Peterson "official notification" that Peterson's position had been terminated. Peterson was paid through October 11, 1996.[1]

Peterson's claims are based upon an alleged conversation and assurances that Freeman gave to Peterson in the end of August, 1996. Peterson's deposition testimony reveals the content of the alleged assurances:

[Peterson]: [D]uring that period of time while I was working for DAKA, I had received another job offer. And as I was looking for an opportunity, [Freeman] and I met—I want to say it was at the Troy [Michigan] Marriot—and we were going out to dinner.

But I had an opportunity. He and I were sitting down in the lobby, and I asked Bill [Freeman], we got to talking about that operation [the K–Café venture], and I says, you know, How are things going with the contract? And he said, Oh, just fine. Everything's going to be just fine. And I said, Well, Bill, I just want to make sure. I says, I know

when I came on board, I came on board to work for DAKA, and I was looking for a career.

And that's when he said to me, he says, Tom, they need a person like you with DAKA. And he said, If anything happens for any reason with the contract, that they're going to—that we need you at DAKA.

. . . . .

I asked Bill how the contract was going. And he says, Fine, everything is going—I mean, this was all—all the way up to this point, everything was absolutely fine and the contract was going to be signed.

And I said, Do you have any reservations about it? No. And I said, well then—that's when I asked him the question pretty much on how—I wish I could phrase it for you differently—but it was basically, you know, he complimented my work at DAKA. And I asked him at this point, Is there any concerns? And he said, Absolutely not.

And that's when we got into the conversation there about having a position or continuing with DAKA and being at DAKA.

Based on these assurances, Peterson turned down a pending job offer with Woolworth Corp. (Woolworth) and remained at Daka. Peterson himself admits that he did not inform Freeman that he had been considering another job offer:

Q: Did you ever tell anybody—prior to the termination, did you tell anybody that Woolworth had offered you a job?

A: No, not that I remember.

In November 1997, Peterson filed his complaint in a Texas state court.[2] Peter-

---

1. In January, 1997, through the efforts of both Freeman and Peterson himself, K–Mart hired Peterson as a director, at a salary comparable to that he had enjoyed with Daka. Peterson was eventually promoted to vice-president, and remained in that position until he was terminated because of his division's poor performance in November, 1998.

2. The case was removed to the Northern District of Texas by Daka in January, 1998. Thereafter, Daka filed a motion to transfer the case to Massachusetts pursuant to 28 U.S.C. § 1404(a). Peterson, in response, apparently agreed that Texas was not a convenient forum, and contended that the case should be transferred to Michigan. On October 7, 1998,

son seeks to recover damages in the amount he would have made had he accepted the Woolworth offer under theories of fraud and negligent misrepresentation.[3] Defendant contends that the alleged conversation set forth above is, as a matter of law, not sufficient to support plaintiff's claims for fraud or negligent misrepresentation.

Before addressing each claim, I must first address the choice of law issue. Defendant contends that Texas law applies while plaintiff argues that Michigan law applies.

### III. CHOICE OF LAW

█ Subject matter jurisdiction is premised upon diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Ordinarily, a federal court sitting in diversity must apply the choice-of-law rules of the forum state. *Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir.1998); *Charash v. Oberlin College*, 14 F.3d 291, 296 (6th Cir.1994). In this case, however, plaintiff originally filed suit in Texas. The case is before me pursuant to a transfer under 28 U.S.C. § 1404(a).

█ When a case is properly transferred pursuant to 28 U.S.C. § 1404(a), the transferee court is obligated to apply the state law that would have been applied by the transferor court, including the transferor state's choice of law rules. *Northland Insurance Co. v. Guardsman Products, Inc.*, 141 F.3d 612, 616 (6th Cir.1998); *see Ferens v. John Deere Co.*, 494 U.S. 516, 527–28, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990); *Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). This is true whether the case is transferred by the defendant, *Van Dusen*, 376 U.S. at 639, 84 S.Ct. 805, or the plaintiff, *Ferens*, 494 U.S. at 524–33, 110 S.Ct.

1274. Texas choice of law rules must therefore be applied to this case.

█ Texas courts follow the "most significant relationship test," as enunciated in the Restatement (Second) of Conflict of Laws, § 6 (1969). *Gutierrez v. Collins*, 583 S.W.2d 312, 318–19 (Tex.1979). The Texas Court of Appeals applied the "most significant relationship" test in the context of fraud and negligent misrepresentation in *Swanson v. Schlumberger Technology Corp.*, 895 S.W.2d 719 (Tex.App.1994), *rev'd on other grounds*, 959 S.W.2d 171 (1997). Citing § 148(2) of the Restatement (Second) of Conflicts, *Swanson* indicates that the following factors are relevant in determining which state has the most significant relationship to a claim of fraud and misrepresentation:

(1) The place or places where plaintiff acted in reliance upon the representations;

(2) The place where plaintiff received the misrepresentations;

(3) The place where defendant made the misrepresentations;

(4) The residence or place of incorporation of the parties; and

(5) The place where the tangible thing which is the subject of the transaction between the parties is situated at the time of the misrepresentations.

*Id.* at 733.

█ Application of the § 148(2) factors suggests that Texas has the most significant relationship to plaintiff's claims. While Daka made and Peterson received the alleged misrepresentations in Michigan, plaintiff "acted" in reliance in Texas when he remained at his position with Daka in Texas rather than accepting a position with Woolworth (apparently located in New York).[4] Peterson was a Texas

the Honorable A. Joe Fish transferred this case to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a).

**3.** Peterson's complaint originally included a count of promissory estoppel. Plaintiff voluntarily dismissed this claim in his response brief.

**4.** Peterson contends that his "reliance" occurred in Michigan rather than Texas because "[a]s soon as Freeman made his representa-

resident at the time of the misrepresentations (Daka is incorporated in Massachusetts). The "tangible thing" was, if anything, Peterson's job with Daka, and that, again, was in Texas. Balancing all of these factors, I conclude that Texas law applies.[5]

## IV. DISCUSSION

### A. Summary Judgment Standard

Courts properly grant summary judgment where the moving party establishes through pleadings, depositions, answers to interrogatories, admissions, and affidavits that "there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." *Estate of Mauro v. Borgess Medical Center*, 137 F.3d 398, 401 (1998), quoting FRCP 56(c). Under Rule 56(c), defendant bears an initial burden of demonstrating that an essential element of the non-moving party's case is lacking. *Kalamazoo River Study Group v. Rockwell Int'l Corp.*, 171 F.3d 1065, 1068 (6th Cir.1999) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the moving party has met this burden, the nonmoving party must show the court that there is in fact a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmoving party must identify specific facts, supported by evidence, and may not rely on mere allegations contained in the pleadings. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505.

In deciding a motion for summary judgment, the court must view the factual evidence in the light most favorable to the nonmoving party. *Mount Elliott Cemetery Ass'n. v. City of Troy*, 171 F.3d 398, 402–3 (6th Cir.1999) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). In this case, I must take as true the factual allegations contained in Peterson's deposition testimony. Thus, for the purposes of this motion, I assume that Freeman did have the conversation recounted by Peterson.

Assuming that these assertions were made, defendant contends that Peterson nonetheless fails to demonstrate essential elements of both fraud and negligent misrepresentation claims. I conclude that defendant is correct.

■ The crux of plaintiff's case is that he was assured by Freeman that he had a job with Daka whether or not the K–Café negotiations were successful and that, based on that assurance, he continued working for Daka rather than accept a pending job offer from Woolworth. It is abundantly clear that plaintiff could not enforce this assurance as a binding employment contract. He was an at-will employee from his hire through October 27, 1996. His termination in September, 1996 was well within that period. The assurance given—"We need you at Daka"—was not sufficiently definite to modify plaintiff's at-will status. *See Montgomery County Hospital District v. Brown*, 965 S.W.2d 501, 502 (Tex.1998) (noting that "just-cause" employment cannot be constructed

---

tions, Peterson immediately made the decision to forego other employment opportunities." This argument is unpersuasive for two reasons. First, taking plaintiff's argument to its logical extreme, "reliance" would occur in whatever state plaintiff happened to be in at the time he formed the subjective intent to act upon the alleged misrepresentations. Second, as comment f. to § 148(2) makes clear, reliance may occur in more than one state and in varying degrees. Peterson may (or may not) have formed the subjective intent to

rely upon Freeman's statements in Michigan, but Peterson manifested his reliance by maintaining his job in Texas.

**5.** I am not unmindful of the Memorandum and Order of September 29, 1998, in which Judge Fish noted, in deciding the motion for transfer under 28 U.S.C. § 1404(a), that "Peterson's claims will likely be decided according to the laws of the State of Michigan." p. 11–12.

"out of indefinite comments, encouragements, or assurances") (citing as an example *Rowe v. Montgomery Ward & Co.,* 437 Mich. 627, 473 N.W.2d 268 (1991)).

Plaintiff seeks to avoid the import of his at-will status by alleging fraud and negligent misrepresentation rather than breach of contract.[6] Texas case law does not support this tactic.

## A. Fraud

 Actionable fraud requires (1) a material misrepresentation, (2) which was false, and (3) which was either known to be false when made or was asserted without knowledge of its truth, (4) which was intended to be acted upon, (5) which was relied upon, and (6) which caused injury. *Formosa Plastics Corp. v. Presidio Engineers and Contractors, Inc.,* 960 S.W.2d 41, 47 (Tex.1998). A promise to do an act in the future is actionable fraud only "when made with the intention, design, and purpose of deceiving and with no intention of performing the act." *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 434 (Tex.1986). Defendant contends that plaintiff cannot demonstrate any of the requisite elements of fraud. I need not address each of defendant's contentions. Assuming plaintiff could demonstrate the materiality and knowing falsity of Freeman's promise (elements 1–3), plaintiff does not produce evidence as to elements (4) and (5).

 First, under element (4), plaintiff must provide evidence that Freeman intended that Peterson would act upon the statements made. As Peterson himself admits, Freeman had no knowledge that Peterson was considering the job offer from Woolworth at the time of the conversation. (Peterson Dep. p. 51). Without such knowledge, it is clear that Freeman could not have had the intent, design, or purpose to induce Peterson to forego the Woolworth position, even assuming the other elements of fraud were met.

 Alternatively, plaintiff cannot demonstrate element (5): reliance. To satisfy the reliance element, plaintiff must demonstrate not only that he relied on the alleged promise, but also that his reliance was reasonable and justified. *Gilmartin v. KVTV–Channel 13,* 985 S.W.2d 553, 558 (Tex.App.1998). The letter of July 26, 1996, clearly informed Peterson that he was a probationary and hence an at-will employee until October 27, 1996. In the context of at-will employment, promises for future employment that provide no specific length of time, lack definiteness, or that give mere assurances cannot be relied upon to support fraud. *Id.* at 558–59.[7] Freeman's statement—"We need you at Daka"—does not have the definitiveness necessary to induce reasonable reliance.

## B. Negligent Misrepresentation

 The elements of negligent misrepresentation are likewise not satisfied by the alleged assurance of job security. "[T]he sort of 'false information' contemplated in a negligent misrepresentation

---

6. While plaintiff's complaint refers only to fraud, plaintiff's brief in opposition to defendant's motion, as well as a supplemental brief, cites a series of Michigan cases involving "silent fraud" in an effort to support his fraud claim. It is clear from a review of Texas case law involving fraud for "failure to disclose material facts," *see, e.g., Facciolla v. Linbeck Construction Corp.,* 968 S.W.2d 435, 445–6 (Tex.App.1998), that analysis of such a claim is essentially identical to analysis of a claim of fraudulent misrepresentation. Thus, the reasons that follow for granting summary judgment as to plaintiff's fraud claim are equally applicable to a claim of "silent fraud."

7. There is a line of Texas case law cited by defendant that suggests that an at-will employee is categorically precluded from alleging fraud in an attempt to circumvent his at-will status. *See Leach v. Conoco,* 892 S.W.2d 954, 961 (Tex.App.1995); *Sebesta v. Kent Elecs. Corp.,* 886 S.W.2d 459, 464 (Tex.App. 1994). *Gilmartin,* while it calls into question such a categorical preclusion, nonetheless holds that a claim of fraud cannot be supported by vague, indefinite assurances.

case is a misstatement of existing fact." *Airborne Freight Corp., Inc. v. C.R. Lee Enters., Inc.*, 847 S.W.2d 289, 294 (Tex. App.1992). An expression of "speculative ideas as to future events" will not support a claim for negligent misrepresentation. *City of Beaumont v. Southwestern Bell Telephone Co.*, 870 S.W.2d 123, 138 (Tex. App.1993). Promises of future employment do not constitute "statements of existing fact" necessary to support a claim of negligent misrepresentation. *Airborne Freight*, 847 S.W.2d at 298 (finding that the promise "as long as you do your job, you'll have a job" could not support a claim of negligent misrepresentation). Freeman's alleged assurance of job security cannot support plaintiff's claim of negligent misrepresentation.

■■■ In addition, a claim of negligent misrepresentation requires proof of four elements:

(1) a misrepresentation made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest;

(2) the misrepresentation is false and provided for the guidance of others in their business;

(3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and

(4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex.1991). Element (2) requires that the statement be made "for the guidance of others in their business". As noted, because Freeman had not been told that Peterson was considering another job offer, it cannot be shown that Freeman made the statements "for the guidance" of

Peterson in making his decision. Absent some knowledge on the part of Freeman that Peterson intended to rely on Freeman's statements, liability under a theory of negligent misrepresentation does not arise, and Freeman was under no duty to exercise reasonable care in the conversation.[8]

## C. "Negotiations are going just fine."

In response, plaintiff contends that there was another "assurance" given by Freeman to Peterson during the conversation in Troy, Michigan—that the K–Café venture negotiations were going "just fine."[9] He argues that this separate statement is itself a sufficient basis for a claim of fraud and negligent misrepresentation.

■■■ Plaintiff's claims based on this assurance suffer the same deficiencies as the claims based on the "We need you at Daka assurance." As defendant notes, it is well-established that actionable fraud cannot be supported by "mere matter of opinion, judgment probability or expectation." *Peterson v. Barron*, 401 S.W.2d 680, 687 (Tex.Civ.App.1966). Freeman's vague alleged statement that the negotiations were going just fine is not a statement of existing material fact necessary to support either of plaintiff's claims. Further, no reasonable juror could find that Peterson justifiably relied on Freeman's apparently casual assessment of the K–Café venture. And the fact remains that Peterson did not inform Freeman of the pending job offer from Woolworth—thus precluding a showing that the statement was made either with the "intent, design or purpose" required as to the fraud claim or "for the guidance" of Peterson as required to support the negligent misrepresentation claim.

8. Leaving aside the above deficiencies, it may also be noted that under element (4), negligent misrepresentation requires, as does the fraud claim, evidence of *justifiable* reliance. For the reasons stated, Peterson, an at-will employee, cannot have reasonably or justifiably relied on Freeman's statements.

9. In plaintiff's brief, he refers to this as the "first statement."

Were all of this not sufficient, there is a more fundamental failing in plaintiff's fraud and negligent misrepresentation claims based on the assurance that the K–Café negotiations were going just fine. Plaintiff has not produced evidence from which a reasonable jury could conclude that the negotiations were *not* going just fine at the time the statement was allegedly made.

Plaintiff argues that the fact that negotiations failed in mid-September (approximately September 17, 1996) suggests that the negotiations could not have been going well in late August. Such an argument simply ignores the dynamic nature of corporate negotiations. As Daka's primary negotiator, William Baumhauer, testified in his deposition, Daka and K–Mart were attempting to finalize the venture until the day before the announcement was made that the venture had been terminated. (Baumhauer Dep. p. 28). The mere fact that negotiations eventually failed is not probative of their status three weeks earlier. While I must view the evidence in a light most favorable to plaintiff, *Mount Elliott*, 171 F.3d at 402–3, I "need not accept as true ... unwarranted factual inferences." *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir.1997) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987)).

Plaintiff attempts to bolster his argument by citing deposition testimony that reveals that Daka had concerns as to the accuracy of K–Mart's financial reports and the "operating risks" that Daka was to undertake as part of the K–Café venture as early as February or March 1996. (*See* Baumhauer Dep. pp. 22–28). This fact does not help plaintiff's case. The fact that Daka entertained some concerns as to the details of the K–Café venture, in Feb-

ruary or beyond, is not at all informative of the status of negotiations in August. Deposition testimony from the passages cited by plaintiff reveals that the negotiations were a dynamic, ongoing process,[10] (Baumhauer Dep. p. 25), and that negotiations continued well into September. (*Id.* at 28). Thus, the mere existence of some points of dispute between the parties does not provide evidence that the negotiations were not going well in August 1996.

## V. CONCLUSION

For the foregoing reasons, I conclude that plaintiff has failed to demonstrate a triable issue of fact as to the fraud and negligent misrepresentation counts of his complaint.[11] Defendant's motion for summary judgment is therefore GRANTED as to those two counts. Plaintiff having voluntarily dismissed his claim of promissory estoppel in response to defendant's motion for summary judgment, this case is hereby DISMISSED with prejudice.

**IT IS SO ORDERED.**

---

10. Indeed, the letter of intent between Daka and K–Mart as to the K–Café venture was signed in July 1996. Whatever concerns existed in February or March 1996 obviously did not prevent Daka from believing in July that a deal would ultimately be consummated.

11. Defendant also contends that Peterson's claim for damages is speculative and fails under Texas law. *See, for instance, Allied Vista v. Holt*, 987 S.W.2d 138, 142 (Tex.App. 1999). Given my conclusion that defendant is not liable under the fraud and negligent misrepresentation counts, I need not address this issue.