RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0100p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

MARYE WAHL,

        *Plaintiff-Appellant,*

    *v.*

GENERAL ELECTRIC COMPANY; GE HEALTHCARE;
GE HEALTHCARE AS; GE HEALTHCARE INC.,

        *Defendants-Appellees.*

No. 13-6622

───────────────

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:13-cv-00329—Aleta Arthur Trauger, District Judge.

Argued: August 1, 2014

Decided and Filed: May 22, 2015

Before: BOGGS and DONALD, Circuit Judges; and HOOD, District Judge.[*]

───────────────

## COUNSEL

**ARGUED:** Kenneth J. Brennan, TORHOERMAN LAW, LLC, Collinsville, Illinois, for Appellant. Dwight E. Tarwater, PAINE, TARWATER, BICKERS, LLP, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Kenneth J. Brennan, TORHOERMAN LAW, LLC, Collinsville, Illinois, for Appellant. Dwight E. Tarwater, Taylor A. Williams, PAINE, TARWATER, BICKERS, LLP, Knoxville, Tennessee, for Appellee.

───────────────

[*]The Honorable Denise Page Hood, District Judge for the United States District Court for the Eastern District of Michigan, sitting by designation.

_____

**OPINION**

_____

BOGGS, Circuit Judge.  Plaintiff-Appellant Marye Wahl appeals the district court's grant of summary judgment to Defendant-Appellee General Electric (GE) in her personal-injury action arising out of the development of a rare and serious disease following the administration of one of GE's drugs.  The district court granted the defendant's motion for summary judgment based on Tennessee's statute of repose.  For the reasons below, we affirm the district court's grant of summary judgment.

I

Defendant-Appellee General Electric manufactures Omniscan, a gadolinium-based contrast agent approved by the FDA.  The administration of Omniscan has been associated in some patients with the development of nephrogenic systemic fibrosis (NSF).  NSF, "a progressive fibrotic disease affecting the tissues and organs with no known cure," *In re Gadolinium-Based Contrast Agents Products Liab. Litig.*, MDL No. 1909 2010 WL 1796334, at *1 (N.D. Ohio May 4, 2010), *op. mod. on reconsideration*, 2010 WL 5173568 (N.D. Ohio June 18, 2010), is a rare and deadly condition that leads to the hardening (fibrosis) of the kidneys and is usually seen in patients with severe kidney disease following exposure to gadolinium.

Omniscan was administered to Wahl for two MRIs she received in Nashville, Tennessee, in May and November 2006.  In May 2007, about one year after Wahl's first administration of Omniscan, she displayed the first symptoms of NSF.  She was officially diagnosed with NSF in October 2010.

Wahl is a resident of and was treated and diagnosed in Tennessee.  However, the Judicial Panel on Multidistrict Litigation consolidated all pre-trial litigation of Omniscan-related cases in the United States District Court for the Northern District of Ohio.  *In re: Gadolinium Contrast Dyes Prods. Liab. Litig.*, 536 F. Supp. 2d 1380, 1382 (J.P.M.L. 2008) (MDL 1909).  Although plaintiffs usually file complaints destined for an MDL-designated district in their home district and allow the judge to transfer their case for pre-trial litigation, this MDL panel issued a "Direct

Filing Order" that permitted plaintiffs to avoid the seemingly inefficient step of filing-and-transfer required in the absence of such an order. Accordingly, in May 2011, Wahl filed a complaint in the Northern District of Ohio alleging injury from the administration of Omniscan to her. With the agreement of both Wahl and GE, the MDL judge in Ohio transferred the case almost two years later, in April 2013, to the United States District Court for the Middle District of Tennessee, "the district court of proper venue."

Shortly after the transfer to the Middle District of Tennessee, GE moved for summary judgment, arguing that, since Wahl received her MRIs in 2006, and since all Omniscan doses produced from 2004 to 2006 were marked with expiration dates two years after manufacture, the Omniscan administered to her must have expired no later than 2008. GE further argued that the Tennessee Products Liability Act's (TPLA) statute of repose, which requires all suits to be instituted within one year of the expiration date appearing on a product's packaging, barred Wahl's suit because all of her claims expired, at the latest, on November 1, 2009—almost two years before she filed her complaint. Wahl argued that, for choice-of-law reasons, the Tennessee statute did not apply. The district court granted GE's motion. In its opinion, it applied Tennessee choice-of-law rules, which required the application of Tennessee substantive law, including the statute of repose. Wahl timely appealed.

II

We review the district court's determination regarding choice of law de novo. *See Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991); *Charash v. Oberlin Coll.*, 14 F.3d 291, 296 (6th Cir. 1994).

We also review the district court's grant of summary judgment de novo. *See Rannals v. Diamond Jo Casino*, 265 F.3d 442, 447 (6th Cir. 2001). Summary judgment should be awarded only when "there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether there exists a genuine issue of material fact, the court must view all evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

III

On appeal, Wahl advances three arguments. First, she argues that Ohio choice-of-law principles must guide the determination of substantive law in this case because federal law requires the use of the choice-of-law principles of the state of the transferor court. Wahl claims that, because she availed herself of the procedural option of filing directly with the MDL court in Ohio, once the MDL court subsequently transferred the case to Tennessee the MDL court is the transferor court.

Second, Wahl argues that, under Ohio choice-of-law principles, the Tennessee statute of repose, which effectively extinguished her vested cause of action before she could discover it, could not be applied because it violates Ohio public policy, as articulated in the Ohio Constitution's Right to Remedy Clause.

Finally, Wahl argues that New Jersey substantive law must be applied under the choice-of-law rules of either Tennessee or Ohio and that the motion for summary judgment would be defeated because there is no statute of repose under New Jersey law. The Restatement (Second) of Conflict of Laws informs the relevant law both of Ohio and of Tennessee.

We affirm the judgment of the district court because the choice-of-law rules of Tennessee are the correct rules to govern this case. In addition, under both the Tennessee and Ohio choice-of-law regimes, Tennessee substantive law, including its statute of repose, applies to this case, despite the Right to Remedy Clause in the Ohio Constitution. New Jersey law does not apply.

A

According to the typical rule, when a diversity case is transferred from one federal district court to another, substantive law governing the jurisdiction of the transferor court controls. This ordinary rule appears strict and inflexible. But it does not apply to cases of direct-filed, later-transferred MDL suits such as the present case. The United States District Court for the Northern District of Ohio was not a transferor court, as defined by the doctrine: At the conclusion of pretrial litigation, Wahl and GE jointly requested transfer to the Middle District of Tennessee where, but for the MDL, Wahl would have filed in the first place. Accordingly, Tennessee choice-of-law rules apply in this case.

1

A case typically changes venue because the plaintiff files in the forum of his choice and then, "[f]or the convenience of parties and witnesses, [and] in the interest of justice," the district court transfers the action to another district "where it might have been brought or . . . to which all parties have consented." 28 U.S.C. § 1404(a). Typically, when a case heard in diversity is transferred from one federal district court to another as a change of venue, the substantive law of the forum in which the plaintiff initially filed (the transferor court) continues as the governing law following the transfer to the court that receives it (the transferee court). The case law concerning transfer and choice of law is grounded in the *Erie* doctrine.

In *Erie Railroad Co. v. Tompkins*, 304 U.S 64 (1938), the United States Supreme Court mandated "that a federal court sitting in diversity apply the substantive law of the forum state, absent a federal statutory or constitutional directive to the contrary." *Russell*, 499 U.S. at 226 (citing *Erie*, 304 U.S. at 78). The Supreme Court applied the *Erie* doctrine to the transfer context in *Van Dusen v. Barrack*, 376 U.S. 612 (1964). *Van Dusen* arose out of the crash of a commercial airliner, intended to fly from Boston to Philadelphia, into Boston Harbor. *Id.* at 613. The plaintiffs brought personal-injury and wrongful-death actions in United States District Court for the Eastern District of Pennsylvania. Defendants, petitioners in the Supreme Court, "moved under [28 U.S.C.] § 1404(a) to transfer these actions to the District of Massachusetts, where it was alleged that most of the witnesses resided and where over 100 other actions [were] pending." *Id.* at 614. The laws governing recovery for wrongful death in Pennsylvania and Massachusetts differed significantly. *Id.* at 627.

The Supreme Court observed that "the most convenient forum is frequently the place where the cause of action arose[,] that the conflict-of-laws rules of other States may often refer to the substantive rules of the more convenient forum," *id.* at 628, and that "difficulties . . . would arise if a change of venue, granted at the motion of a defendant, were to result in a change of law," *id.* at 629. The Supreme Court concluded that "[t]here is nothing . . . in the language or policy of § 1404(a) to justify its use by defendants to defeat the advantages accruing to plaintiffs who have chosen a forum which, although it was inconvenient, was a proper venue." *Id.* at 633-34; *see id.* at 635 (observing that the legislative history of § 1404(a) "supports the view that §

1404(a) was not designed to narrow the plaintiff's venue privilege or to defeat the state-law advantages that might accrue from the exercise of this venue privilege but rather the provision was simply to counteract the inconveniences that flowed from the venue statutes by permitting transfer to a convenient federal court").

Finally, the Supreme Court observed, this interpretation "fully accords with and is supported by the policy underlying *Erie*":

> for the same transaction[,] the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away, should not lead to a substantially different result. Applying this analysis to § 1404(a), we should ensure that the accident of federal diversity jurisdiction does not enable a party to utilize a transfer to achieve a result in federal court which could not have been achieved in the courts of the State where the action was filed.

*Id.* at 637–38 (internal quotation marks omitted); *cf. Hanna v. Plumer*, 380 U.S. 460, 468 (1965) (observing that *Erie* has two aims: the "discouragement of forum-shopping and avoidance of inequitable administration of the laws").

The Supreme Court applied *Van Dusen* in *Ferens v. John Deere Co.*, 494 U.S. 516, 530 (1990). The *Ferens* plaintiff, though from Pennsylvania, originally filed his suit in Mississippi to circumvent Pennsylvania's statute of limitations. Having successfully filed, he then sought, and received, a transfer back to Pennsylvania where, the Supreme Court ruled, in accordance with its decision in *Van Dusen*, Mississippi substantive law was to apply. Although, as the Supreme Court acknowledged, it might "seem too generous because it allows the [plaintiff] to have both [his] choice of law and [his] choice of forum," the Court decided that the benefits of applying a strict per se rule outweighed the fact that such a rule might not be appropriate in all cases. *Id.* at 531.

2

The policy that underlies *Erie*, *Van Dusen*, and even *Ferens* demands uniform federal and state outcomes: that the accident of a suit in federal instead of state court should not alter the result. This policy applies to the present case. Applying the *Erie* policy analysis to § 1404(a), we ensure that the accident of federal diversity jurisdiction does not enable a party to utilize a

transfer to achieve a result in federal court that could not have been achieved in the courts of the state where the action was filed.

In both *Van Dusen* and *Ferens*, unlike in the present case, the plaintiff filed in district court as an ordinary (single-district) suit, seeking to apply the substantive law and the choice-of-law principles of the forum in which the court sat. Further, each plaintiff's choice of initial forum was appropriate as to both jurisdiction and venue.

Direct-filed MDL suits that are then transferred to a more convenient forum for trial are an exception to the ordinary rule modeled in *Van Dusen* and *Ferens*. This must be so, or else every district court receiving a direct-filed MDL suit would be bound to apply the choice of law principles of the MDL forum. In effect, the accident of bureaucratic convenience would elevate the law of the MDL forum.

No court of appeals and few district courts have ruled directly on the issue of choice of law following transfer of a direct-filed MDL case. Most of the courts that have confronted this issue have decided that it did not make sense to apply the *Van Dusen* transferor-transferee rule mechanically. The first case not to apply *Van Dusen*'s rule to a direct-filed MDL case was *In re Yasmin*. The district court in that case held that the only sensible option was to treat out-of-state, direct-filed suits as if they had been transferred from a court "sitting in the state where the case originated." No. 3:09-md-02100-DRH-PMF, 2011 WL 1375011, at *6 (S.D. Ill, Apr. 12, 2011).

Since *Yasmin*, although several district courts have mechanically applied the *Van Dusen* rule, the weight of authority has adopted *Yasmin*'s rule. *See, e.g., Sanchez v. Bos. Scientific Corp.*, No. 2:12-CV-05762, 2014 WL 202787, at *4 (S.D. W. Va., Jan. 17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, I will follow the better-reasoned authority that applies the choice-of-law rules of the originating jurisdiction . . . ."); *In Re Avandia Mktg.*, No. 07-MD-01871, 2011 WL 4018259, at *1 n.5 (E.D. Pa. Sept. 7, 2011) (citing *Yasmin* for the proposition "that cases that originated outside of the court's judicial district and that were filed directly into the MDL would be treated as if they were transferred from a judicial district sitting in the state where the case originated," but "reserv[ing] for another day the resolution of" which "law should govern cases filed directly in the MDL by plaintiffs from states other than" the one in which the court sits); *but see, e.g., Byers v. Lincoln Elec. Co.*, 607 F. Supp. 2d 840,

844 (N.D. Ohio 2009) (stating, without further analysis, that because the plaintiff "filed his complaint directly in this Court . . . , the choice-of-law principles of Ohio, the forum state, govern the Court's analysis"); *In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 904 & n.2 (E.D. La. 2007) (concluding, with lengthy analysis, that Louisiana's choice-of-law rules applied even though it could "create another oddity" because "the traditional 'transferor' / 'transferee' roles will be reversed").

Our precedent also confirms that the court of proper venue should apply its own choice-of-law rules, not those of the MDL court. For example, in *Martin v. Stokes*, the plaintiff, a Virginia resident, was injured in in an automobile accident in Kentucky by a vehicle driven by a citizen of California. 623 F.2d 469 (6th Cir. 1980). When it came to the attention of the plaintiff that Kentucky, unlike Virginia, had a one-year statute of limitations and that it had already expired, the plaintiff immediately filed in federal district court in Virginia so as to take advantage of Virginia's two-year statute of limitations. The defendants moved to quash process and to transfer the case to the Western District of Kentucky after the plaintiff attempted to serve process in Kentucky. Though the motion to quash was denied, the Virginia district court did transfer the case to Kentucky. Following transfer, the defendants moved to dismiss based on Kentucky's one-year statute of limitations. The plaintiff argued in response that Virginia's substantive law, since it was the site of the transferor court, should apply. The district court disagreed, granted the motion to dismiss, and the plaintiff appealed.

On appeal, we determined, in accordance with *Van Dusen*, that choice of law does not depend on whether the party seeking transfer is plaintiff or defendant. Rather, we concluded that "the choice of law should depend upon *the motive of transfer*, that is, whether the transfer was pursuant to 28 U.S.C. § 1404(a) or § 1406(a)." *Martin*, 623 F.2d at 471 (emphasis added).[1]

Our reasoning in *Martin* proceeded in several steps. *Van Dusen* declared that a *transfer* for the convenience of the parties under § 1404(a) (following the plaintiff's initial choice of an appropriate forum) "should be regarded as a federal judicial housekeeping measure, . . . generally intended, on the basis of convenience and fairness, simply to authorize a change of courtrooms,"

---

[1]28 U.S.C. 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

*Martin*, 623 F.2d at 472 (quoting *Van Dusen*, 376 U.S. at 636–37). But transfers under § 1406(a) for improper forum are "based not on the inconvenience of the transferor forum but on the *impropriety* of that forum." *Martin*, 623 F.2d at 472. Therefore, if the law of the transferor forum were applied following a § 1406(a) transfer, "the plaintiff could benefit from having brought the action in an impermissible forum." *Ibid.* Reasoning that "[s]uch forum-shopping was what the Supreme Court sought to eliminate by its decision in *Van Dusen*," we concluded that, "following a transfer under § 1406(a), the transferee district court should apply its own state law rather than the state law of the transferor district court." *Ibid.*

Although *Martin* predated *Ferens*, many post-*Ferens* cases from other circuits continue to draw the distinction between transfer orders under § 1404(a) and those under § 1406(a). *See, e.g., Eggleton v. Plasser & Theurer Exp. Von Bahnbaumaschinen Gesellschaft, MBH*, 495 F.3d 582, 588-89 (8th Cir. 2007) (reversing, after forty years, in light of overwhelming authority to the contrary, the circuit's longstanding rule that the law of the transferor court should be employed by the transferee court following transfers pursuant to § 1406(a)); *Shaeffer v. Village of Ossining*, 58 F.3d 48, 50 (2d Cir. 1995) (finding that, in lawsuits transferred pursuant to § 1406(a), "the transferee court should apply whatever law it would have applied had the action been properly commenced there" (quoting 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3827 at 267 (2d ed. 1986))); *Myelle v. Am. Cyanamid Co.*, 57 F.3d 411, 413 (4th Cir. 1995) (finding that, when receiving a suit transferred under § 1406(a), the receiving court "must apply the law of the state in which it is held rather than the law of the transferor district court"). At least in the context of § 1406(a) transfers, the weight of authority demonstrates that the mechanical application of the transferor-transferee rule articulated in *Van Dusen* is not warranted in all cases of venue transfer.

If plaintiffs could avail themselves of the law of the MDL-court forum, every plaintiff in an MDL case would be able to choose the law of a state that is not an appropriate venue. This is the evil we sought to avoid in *Martin*, and the basis of decision that cases transferred under § 1406(a) should apply the law of what Wahl calls the "transferee" court.

3

In the present case, the Northern District of Ohio cannot be said to have been a "transferor" court as were the courts in *Van Dusen* or *Ferens*. In 2008, the JPML directed dozens of NSF cases to the United States District Court for the Northern District of Ohio for consolidated pretrial litigation. The MDL court then issued Pretrial Order No. 1, which allowed later-filing litigants the option of initiating their suit directly with the MDL court, rather than filing in their home jurisdictions and then awaiting transfer to the MDL court in the first instance. The terms of the pretrial order explicitly stated:

> Defendants will not challenge the venue of any action filed directly in the Northern District of Ohio for purposes of pretrial proceedings. Upon the completion of all pretrial proceedings . . . this Court, pursuant to 28 U.S.C. § 1404(a), will transfer that case to a federal district court of proper venue, as defined in 28 U.S.C. § 1391, based on the recommendations of the parties to that case.

The pretrial order further stated that the "fact that a case was filed directly in MDL 1909 pursuant to this order will have *no impact on the choice of law to be applied*." (emphasis added). Wahl opted to file directly in the Northern District of Ohio. Wahl herself mirrored to the MDL court in her complaint the pretrial filing order's sentiment that suits would later be transferred to an appropriate venue following the conclusion of pretrial litigation: "[t]he venue of the current case would have been appropriate under 28 U.S.C. § 1391 in the Middle District of Tennessee because a substantial part of the events giving rise to this claim occurred in that district as Plaintiff Marye Wahl was administered Omniscan in that district, and because Plaintiff has at all times relevant resided in that district." At the conclusion of pretrial litigation, Wahl and the defendant submitted a Joint Stipulated Motion for Entry of Summary Judgment, which specified that the parties jointly requested transfer to the Middle District of Tennessee.

The terms of the order permitting direct filing, the contents of Wahl's complaint, and the subsequent joint request for transfer to the Middle District of Tennessee all reveal that Wahl, unlike the litigants in *Van Dusen* and *Ferens*, did not subject herself to the jurisdiction of the district court where she filed. Instead, she took advantage of the procedural mechanism the MDL made available to increase efficiency of filings.

Wahl's case more closely resembles a transfer under § 1406(a) than a typical transfer under § 1404(a). Like transfers under § 1406(a), Wahl's suit was transferred out of the Northern District of Ohio because that district was not a proper venue in her case; for that reason, the direct-filing order contemplates eventual transfer to a proper venue. Wahl now wishes to take advantage of the facts that she first filed her case in the Northern District of Ohio and that, when pretrial litigation ended, the case was transferred to the Middle District of Tennessee. By virtue of this administrative step, she designates the Northern District of Ohio the "transferor" court and the Middle District of Tennessee the "transferee" court. Although these labels may reflect the chronological unfolding of filings and transfers, Wahl essentially rests her case on little more than filing terminology.

Finally, Wahl's rule would complicate MDL-panel litigation immensely. Any benefit in efficiency from combining similar litigations for pretrial motions would pale in comparison to the complications of applying the substantive law of the venue in which the MDL panel happened to convene cases from around the country.

B

Even if Ohio law, including Ohio's choice-of-law rules, were to apply to this action, it still makes no difference to the outcome of the case because under Ohio's choice-of-law rules, Tennessee substantive law must still be applied.

In 1984, Ohio adopted a new choice-of-law regime for tort cases, the case-by-case "most significant relationship" test articulated in § 146 of the Restatement (Second) of Conflict of Laws. *Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286, 288–89 (Ohio 1984) (per curiam).

As articulated by the Restatement, the most-significant-relationship test provides that

> [i]n an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 146 (1971). In addition to the default rule of the place of injury, the Supreme Court of Ohio also explicitly adopted the relevant factors set forth

in § 145, which are analyzed in light of the default rule of the place of injury. *Morgan*, 474 N.E.2d at 289. As enumerated in that case, these factors include:

> (1) the place of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; (4) the place where the relationship between the parties, if any, is located; and (5) any factors under Section 6 which the court may deem relevant to the litigation.

*Ibid*. (footnote omitted). The § 6 factors include:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6(2) (1971).

The § 6 factors do not counsel the selection of Ohio law in this case. Tennessee has a far greater interest in a lawsuit by one of its own injured citizens against a drug manufacturer than does New Jersey. Tennessee law should apply, even under Ohio choice-of-law principles.

This case presents a straightforward application of Ohio's choice-of-law rules. The default rule requires the use of the law of the place of injury. In this case, the place of injury was Tennessee and it is therefore presumed that Tennessee's law will apply. This presumption can only be overcome if, in light of the § 145 factors, it turns out that another state has a more significant relationship with the case than the state where the injury occurred. Here, the § 145 factors also point toward the application of Tennessee law: (1) the injury occurred in Tennessee; (2) the conduct causing the injury (the MRIs and the administration of Omniscan) occurred in Tennessee and other conduct causing the injury (such as manufacturing and business) occurred throughout the United States; (3) GE is a corporation of national scope and was present doing business in Tennessee and Wahl was a resident of Tennessee at the time of the injury; and (4) the relationship between the parties was located at the site of Wahl's treatment, Tennessee. Other than the fact that GE's medical division operated in and was headquartered in New Jersey, and that the Omniscan was manufactured in Ireland, every § 145 factor points toward Tennessee.

Wahl points to § 90 of the Restatement, the so-called "public policy exception," which requires that "[n]o action will be entertained on a foreign cause of action the enforcement of which is contrary to the strong public policy of the forum." Restatement (Second) of Conflict of Laws § 90 (1971). Wahl argues that the Right to Remedy Clause of the Ohio Constitution would not countenance the Tennessee statute of repose's effect of extinguishing Wahl's vested rights before she could discover them. This, she argues, is so strongly against Ohio's public policy that it runs afoul of § 90 of the Restatement.

Putting aside any other deficiencies in her argument, § 90 simply does not apply to affirmative defenses. The first comment to § 90 states that "[t]he rule of this Section does not justify striking down a defense good under the otherwise applicable law on the ground that this defense is contrary to the strong public policy of the forum." Restatement (Second) of Conflict of Laws § 90, cmt. a (1971).

Since Tennessee was the place of injury and has the most significant relationship with the parties to the action, and since § 90 is inapplicable to affirmative defenses, Ohio's choice of law requires the application of Tennessee law and its one-year statute of repose.

As to Wahl's final argument that New Jersey law should apply under either Tennessee or Ohio choice-of-law rules, she is in error. Both Ohio and Tennessee have adopted the Second Restatement and the analysis under Tennessee's choice-of-law rules would also demand the application of Tennessee law. *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992) (adopting the "most significant relationship" approach of the Second Restatement).

IV

For the reasons above, we AFFIRM the district court's grant of summary judgment to the defendant.