Richard DIXON, et al., Plaintiffs–
Appellees,

v.

**TRAVELERS INDEMNITY
COMPANY, Defendant–
Appellant.**

**No. 15–1612.**

United States Court of Appeals,
Sixth Circuit.

Nov. 9, 2015.

Before: SUTTON and KETHLEDGE,
Circuit Judges; BECKWITH, District
Judge.*

* The Honorable Sandra S. Beckwith, United States District Judge for the Southern District of Ohio, sitting by designation.

KETHLEDGE, Circuit Judge.

To make a reasonable choice between conflicting medical recommendations, an insurer must consider the facts and reasoning underlying each recommendation. Travelers Indemnity Company argues that Michigan insurance law holds otherwise, and appeals the district court's determination that Travelers unreasonably denied insurance benefit payments to Richard and Paula Dixon. We affirm.

Richard Dixon lost his right leg in an August 2010 motorcycle accident. He suffered additional injuries to his right hand and arm, and to the ligaments in his left knee. Dr. Julie Gronek supervised Dixon's rehabilitation. She found that Dixon's particular combination of injuries impaired his recovery. The damage to Dixon's left knee made it difficult for him to find his balance with the prosthetic attachment on his right leg, giving Dixon a slow and shaky gait. Injuries to Dixon's right hand and arm left him unable to properly grip the "assistive devices"—walkers, canes, crutches, and parallel bars—that would otherwise have aided in his rehabilitation. His arm and hand injuries prevented him from performing basic personal tasks, including bathing, dressing, cooking, using the bathroom, and putting on and taking off his prosthetic leg. Dr. Gronek prescribed attendant care to help Dixon perform those tasks. Dixon's wife, Paula, served as his attendant-care provider; her new, round-the-clock role as her husband's caregiver required her to give up her job at a nearby public school.

Between 2010 and 2013 Dixon's insurer, Travelers Indemnity Company, reimbursed Paula Dixon for her attendant-care services pursuant to Michigan insurance law. *See* Mich. Comp. Laws § 500.3107(1)(a). In February 2013, Travelers asked Dr. Joseph Femminineo to conduct an independent medical examination of Richard Dixon. Dr. Femminineo examined Dixon and reviewed his medical records. He told Travelers that Dixon did not need attendant care. In March 2013, Travelers informed the Dixons that "no further reimbursement requests for attendant care payments [would] be honored." The Dixons thereafter sued Travelers for reimbursement of the Dixons' attendant-care expenses and attorneys' fees. *See* Mich. Comp. Laws §§ 500.3142, 500.3148. Travelers removed the case to federal court. *See* 28 U.S.C. § 1441.

In May 2014, Travelers changed course and reimbursed the Dixons' attendant-care costs for the period from February 2013 to April 2014. Travelers issued a separate check to the Dixons for the accrued interest on these "overdue" benefits under Michigan Compiled Laws § 500.3142. Travelers settled most of the Dixons' claims in the fall of 2014; the settlement agreement left unresolved whether the Dixons were entitled to attorneys' fees under Michigan Compiled Laws § 500.3148. That statute permits insurance claimants to recover attorneys' fees in claims for overdue benefits where an insurer "unreasonably refused to pay the claim or unreasonably delayed in making proper payment." Mich. Comp. Laws § 500.3148(1). In February 2015, on a motion for summary judgment, the district court found that Travelers cut off the Dixons' attendant-care reimbursement payments without first evaluating Dr. Gronek's medical reports showing that Dixon continued to require attendant care at home. It concluded that Travelers had unreasonably refused to pay the Dixons' claim for attendant-care benefits, and that the Dixons were therefore entitled to attorneys' fees under the statute. The court noted, however, that the Dixons had not yet "properly substantiated their claim for attorney's fees" because they

had not submitted billing records. It asked the Dixons to submit those records. The Dixons did so, and on April 30 the district court ordered Travelers to pay $68,850 to cover the Dixons' fees. Travelers filed a notice of appeal on May 29.

## I.

### A.

■ As an initial matter, the Dixons argue that we should not reach the merits of Travelers' appeal for two reasons. First, the Dixons argue that we lack jurisdiction because Travelers did not timely file a notice of appeal. Federal courts of appeals have jurisdiction over appeals from "all final decisions" of the United States district courts. 28 U.S.C. § 1291. A party to a civil case generally has 30 days from the entry of a final decision to file a notice of appeal. *See* Fed. R.App. P. 4(a)(1)(A).

Here, Travelers filed its notice of appeal 29 days after entry of the district court's April 30 order granting $68,850 in attorneys' fees. The Dixons argue that Travelers' notice of appeal was nevertheless late because, the Dixons say, the district court's February 13 order of summary judgment, not its order awarding payment of fees, is the "final order" from which Travelers appeals. But a decision is "final" only if it "leaves nothing for the court to do but execute the judgment." *Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emp'rs,* —— U.S. ——, 134 S.Ct. 773, 779, 187 L.Ed.2d 669 (2014). Thus, "a determination as to liability, prior to a determination on the issue of damages or other relief requested, is not a final appealable judgment." *Morgan v. Union Metal Mfg.,* 757 F.2d 792, 795 (6th Cir.1985). On February 13, the district court found that Travelers was liable to the Dixons for rea-

sonable attorneys' fees, but it noted that the Dixons had not yet specified the amount of the fees. Thus, the court could not "determine whether the amount sought [was] reasonable." The February 13 order was therefore not an appealable final judgment. Only on April 30 was the district court able to make a final determination regarding the relief requested by the Dixons. The April 30 order, not the February order, was final; and thus Travelers' notice of appeal was timely filed.

Second, the Dixons argue that Travelers waived its right to appeal the district court's award of fees because the parties' settlement agreement stipulated that the district court would decide whether the Dixons were entitled to fees under Michigan Compiled Laws § 500.3148. But a settlement agreement providing that a district court will resolve certain claims does not strip the parties of the right to appeal the district court's determinations of those claims. *See In re Deepwater Horizon,* 785 F.3d 986, 997 (5th Cir.2015). Instead, for a party to waive its right to appeal the district court's determination, it must "expressly" do so. *Id.* Travelers did not, so it did not waive its right to appeal.

### B.

■ As for the merits, Travelers argues that the district court erred in awarding attorneys' fees to the Dixons under Michigan Compiled Laws § 500.3148. We review de novo the district court's grant of summary judgment. *Wahl v. Gen. Elec. Co.,* 786 F.3d 491, 493–94 (6th Cir.2015). We affirm so long as "there is no genuine issue of material fact and the [Dixons are] entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a).

Michigan law directs insurers to pay a "reasonable fee" to any attorney who represents a claimant entitled to "overdue" insurance benefits that the insurer "unrea-

sonably refused to pay ... or unreasonably delayed." Mich. Comp. Laws § 500.3148(1). When an insurer denies a claim for benefits and bases that decision on the opinion of a doctor hired by the insurer to perform an independent medical examination, Michigan courts look to whether the insurer reasonably considered the medical evidence supplied by both the claimant and the insurer's doctor. *See Moore v. Secura Ins.*, 482 Mich. 507, 759 N.W.2d 833, 841 (2008). The claimant bears the initial burden to supply reasonable proof of his claim. "When the claimant provides such evidence, the insurer then must evaluate that evidence as well as evidence supplied by the insurer's doctor before making a reasonable decision regarding whether to provide the benefits sought." *Id.*

Travelers terminated the Dixons' attendant-care reimbursement after receiving Dr. Femminineo's February 2013 opinion that Richard Dixon no longer needed attendant care at home. That opinion contradicted the opinion of Dr. Gronek, who continued to prescribe attendant care through February 2013 on the basis of Dixon's limited ability to bend his right elbow and raise his arms. Travelers' claims representative later explained that he "didn't think that [Dr. Gronek's] medical records were very clear," and that it was only after he reviewed Dr. Gronek's testimony in this case that he understood "the specific level of care that was needed[.]" In particular, he said that Dr. Gronek's testimony "focused more on the upper extremities and her medical records seem to [sic] more of the lower extremities."

As the district court noted, however, Dr. Gronek's reports "provided an extensive amount of information in regard to [Dixon's] upper extremities from which [Travelers] could have made a proper evalua-

tion." The court concluded that Travelers failed to evaluate the information that Dr. Gronek submitted on the Dixons' behalf, and hence that Travelers had not met its obligation under *Moore* to "evaluate the evidence submitted by Dr. Gronek before making a reasonable decision." *Id.* Travelers does not contest the factual predicate—that Travelers failed to evaluate the evidence submitted by Dr. Gronek—of the district court's legal conclusion. But that predicate disposes of this case. Per the Michigan Supreme Court's decision in *Moore*, Travelers could make a reasonable decision to terminate the Dixons' attendant-care benefits only after it evaluated both Dr. Femminineo's and Dr. Gronek's opinions. Travelers did not do that here, and thus under *Moore* the Dixons are entitled to fees.

Travelers responds that, under *Moore*, Dr. Femminineo's "opinion, standing alone, may ... preclude a finding of unreasonableness in the decision to terminate benefits." Travelers Reply Br. at 20. But *Moore* stands for a narrower proposition: when an insurer receives conflicting opinions concerning the necessity of certain medical care, it "need not resort to a 'tie breaker' [by] ... seek[ing] out another physician to prepare yet another [evaluation] in order to reconcile the conflicting opinions." *Moore*, 759 N.W.2d at 841. What the insurer must do, rather, is conduct a reasoned evaluation that takes both opinions into account. And again Travelers did not do that here.

The judgment of the district court is affirmed.